UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN FINN,<br><br>                Plaintiff,<br>      v.<br>SMITH BARNEY, CITIGROUP GLOBAL MARKETS INC., CITIGROUP INC., BRIAN WILLIAMS, and DOES 1 THROUGH 20, inclusive,<br><br>                Defendants. | Case No. 08-cv-2975 (LTS) (KNF)<br><br>JUDGE LAURA T. SWAIN |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
SMITH BARNEY, CITIGROUP GLOBAL MARKETS INC.,
CITIGROUP INC., AND BRIAN WILLIAMS'
MOTION TO STAY THE PROCEEDINGS**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Brad S. Karp
Susanna M. Buergel
1285 Avenue of the Americas
New York, New York  10019-6064
Tel.   (212) 373-3000
Fax   (212) 757-3980
bkarp@paulweiss.com
sbuergel@paulweiss.com

Charles E. Davidow
1615 L Street, N.W.
Washington, D.C. 20036-5694
Tel.   (202) 223-7300
Fax   (202) 223-7420
cdavidow@paulweiss.com

*Attorneys for Defendants Smith Barney,
Citigroup Global Markets Inc., Citigroup
Inc., and Brian Williams*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 5

I.   Plaintiff Is Subject to an Uncontested, Valid and Binding Arbitration Agreement, the Enforcement of Which Is Mandatory Under the FAA .................................................. 5

II.  Under the Arbitration Agreement, Plaintiff Has Two Options: Pursue His Claims As a Member of a Class or Submit His Individual Claims to Arbitration ........................... 7

III. This Court Has the Authority to Stay the Proceedings Until the Arbitration Agreement Is Satisfied .................................................................................................... 10

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

CASES

*ACF Indus., Inc.* v. *Guinn*,
  384 F.2d 15 (5th Cir. 1967) ...................................................................................................11

*Air China Ltd.* v. *Li*,
  No. 07 Civ. 11128(LTS)(DFE), 2008 WL 754450 (S.D.N.Y. Mar. 17, 2008) ....................6, 12

*Blythe* v. *Deutsche Bank AG*,
  No. 04 Civ. 5867 (SAS), 2005 WL 53281 (S.D.N.Y. Jan. 7, 2005) ........................................10

*Crunk, et al.* v. *BDO Seidman, L.L.P., et al.*,
  No. 2:04-cv-02573-JPM-tmp (W.D. Tenn. May 24, 2005) .....................................................10

*Dean Witter Reynolds, Inc.* v. *Byrd*,
  470 U.S. 213 (1985) ...................................................................................................................6

*Forrest* v. *Unifund Fin. Group, Inc.*,
  No. 04 Civ. 5151 LTS, 2007 WL 766297 (S.D.N.Y. Mar. 13, 2007) .......................................7

*Genesco, Inc.* v. *T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987) .......................................................................................................6

*Hansen* v. *KPMG, LLP*,
  No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) .................10

*Hudson* v. *Deutsche Bank AG*,
  No. 05 C 6783, 2007 WL 1018137 (N.D. Ill. Mar. 30, 2007) ................................................10

*Ingstad* v. *Grant Thornton, LLP*,
  No. 3:05-cv-98, 2006 WL 3751204 (D.N.D. Dec. 19, 2006) ...................................................9

*JLM Indus., Inc.* v. *Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) .......................................................................................................5

*Landis* v. *N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................................10

*LaSala* v. *Needham & Co.*,
  399 F. Supp. 2d 421 (S.D.N.Y. 2005) ......................................................................................11

*LHB Insurance Brokerage Inc.* v. *Citigroup Inc., et al.*, No. 08-cv-3095 (LTS)
  (S.D.N.Y. Mar. 26, 2008) ..........................................................................................................4

*MLDX Invs., LLC v. Parse,*
  No. 2:06-CV-00121 PGC, 2006 WL 1579597 (D. Utah June 1, 2006)..................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985)..................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983)..................7

*Oldroyd v. Elmira Sav. Bank, FSB,*
  134 F.3d 72 (2d Cir. 1998)..................6, 12

*Olson v. Jenkens & Gilchrist,*
  461 F. Supp. 2d 710 (N.D. Ill. 2006)..................9

*Plyler v. BDO Seidman, L.L.P.,*
  No. 04 2146 B/AN, 2004 WL 5039849 (W.D. Tenn. Dec. 29, 2004)..................10

*Plyler v. BDO Seidman, L.L.P.,*
  No. 04 2146 B/AN, 2005 WL 4904453 (W.D. Tenn. Apr. 8, 2005)..................10

*Rio Algom Inc. v. Sammi Steel Co.,*
  562 N.Y.S.2d 486 (N.Y. App. Div. 1st Dep't 1990)..................7

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,*
  523 F. Supp. 2d 376 (S.D.N.Y. 2007)..................11

*Southland Corp. v. Keating,*
  465 U.S. 1 (1984)..................6

*Swanson v. Citigroup Inc., et al.,* No. 08-cv-3139 (LTS) (S.D.N.Y. Mar. 27, 2008)..................4

*Weisman v. Se. Hotel Props. Ltd. P'ship,*
  No. 91 Civ. 6232 (MBM), 1992 WL 131080 (S.D.N.Y. June 1, 1992)..................10

*Wilson, et al. v. Deutsche Bank AG, et al.,*
  No. 1:05-cv-03474 (N.D. Ill. March 20, 2006)..................9

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.,*
  No. 01 Civ. 1044(RJH)(HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005)..................11

**STATUTES**

9 U.S.C. § 2..................5

9 U.S.C. § 4..................3, 6

C.P.L.R. § 7501 *et seq.* (McKinney 2005)..................................................................................7

C.P.L.R. § 7503(a) (McKinney 2005) .........................................................................................7

**OTHER AUTHORITIES**

57 Fed. Reg. 52659-02 (Nov. 4, 1992) .......................................................................................8

72 Fed. Reg. 4574-01 (Jan. 31, 2007).........................................................................................8

NASD Rule 12204(d) .................................................................................................................7

NASD Rule 13204(d) .................................................................................................................7

## PRELIMINARY STATEMENT

Defendants Smith Barney, Citigroup Global Markets Inc. ("CGMI"), Citigroup Inc. ("Citigroup"), and Brian Williams ("Williams") (collectively, "Defendants") respectfully seek a stay of these proceedings, including Defendants' obligation to answer, move or otherwise respond to the Complaint, until it is determined whether John Finn's ("Plaintiff's") claims will proceed as part of the related class actions before this Court —*LHB Insurance Brokerage Inc.* v. *Citigroup Inc., et al.*, 08-cv-3095 (LTS) ("*LHB*"), and *Swanson* v. *Citigroup Inc., et al.*, 08-cv-3139 (LTS) ("*Swanson*"). If the claims do proceed as part of the class actions, this case need not continue at all. If the claims do not proceed as part of the class actions, then they will be subject to arbitration. In neither event will this case ultimately proceed as an individual, separate action before this Court.

Plaintiff, who holds a brokerage account at Smith Barney, has asserted claims with respect to particular investments. His account agreement provides for mandatory arbitration of claims. He attempts to rely on a provision of the arbitration agreement that excludes the claims of a customer who "is a member of a putative class who has not opted out of the class with respect to any claim encompassed by the putative class action" until class certification is denied or he opts out of the class. However, while he relies on the provision excluding class actions from arbitration, he seeks to bring his own claims individually. Thus, he seeks to use the existence of the *LHB* and *Swanson* class actions to delay his obligation to arbitrate his claims, but apparently does not want to proceed as a member of those putative classes.

Plaintiff is, of course, entitled to participate as a class member in *LHB* and *Swanson*. Or he is entitled to proceed individually in arbitration. But he is not entitled to avoid arbitration by pointing to class actions in which he is not participating, thus delaying his arbitration obligation until either class certification is denied or he opts out later in the litigation.

1

Defendants respectfully request that the Court stay the proceedings in the *Finn* action, including Defendants' obligation to answer, move or otherwise respond to the Complaint, until it is determined whether Plaintiff's claims will be resolved as part of the related cases of *LHB* and *Swanson*. If and when it is determined that Plaintiff's claims will *not* be resolved as part of the class actions—either because class certification is denied, Plaintiff opts out, or Plaintiff represents to the Court at any time that he does not wish to participate in the class actions—Defendants will promptly move to compel arbitration in the individual *Finn* action.

## BACKGROUND

Plaintiff alleges that he held a retirement savings account at Smith Barney, (*see* Compl. ¶ 8), which is a division of CGMI. In the Complaint, Plaintiff alleges that he invested in auction rate securities ("ARS") on the recommendation of Smith Barney broker and defendant Brian Williams.[1] (*See* Compl. ¶¶ 11-12.) Plaintiff asserts that he was misled with respect to these investments, and that they were unsuitable for him. He asserts claims under the federal securities laws, state law, and regulatory rules.

Plaintiff executed an agreement with respect to the Smith Barney account in which he made the purchases alleged in the Complaint that contains an arbitration provision. The agreement states, in relevant part:

> 6. Arbitration . . .
>
> **I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the**

---

[1] ARS are long-term securities for which the interest rates or dividend yields are periodically re-set through "dutch auctions," typically held every 7, 14, 28 or 35 days.

2

> construction, performance or breach of this or any other agreement between us, any duty rising from the business of SB or otherwise, shall be determined by arbitration . . . .
>
> *No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.*
>
> **Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.**

(Account Application, Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number, attached as Ex. A to the accompanying Declaration of Charles E. Davidow ("Davidow Decl."), ¶ 6 (bold-face in original, italics added).[2])

       Under the paragraph governing class actions, arbitration is not barred completely or indefinitely. Rather, the arbitration is precluded only while Plaintiff is a member of either a putative or certified class. If the class claims are dismissed, class certification is denied, the class is decertified, or Plaintiff is no longer a class member—either by voluntarily opting out of the class or by a decision of the court, then the arbitration exclusion no longer applies and Plaintiff's individual claims may be compelled to arbitration.[3] Arbitration is mandatory under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and courts faced with an uncontested arbitration agreement have no option other than to order the parties to arbitration. *See infra* Part I.

---

[2] Another account document associated with this account is attached as Exhibit B to the Davidow Declaration.

[3] The preclusion of arbitration is also confined to claims encompassed by the putative class action. Defendants do not concede at this time that all of Plaintiff's individual claims are encompassed by the putative class action and reserve their rights to compel those individual claims that are not encompassed by the putative class action to arbitration at the appropriate time, in the event that this Motion to Stay the Proceedings is denied.

Just days after Plaintiff filed the Complaint, two putative class action complaints were filed in this District Court against some of the same defendants named in this action, also asserting claims in connection with the plaintiffs' purchases of ARS from the defendants. *See LHB Insurance Brokerage Inc.*, No. 08-cv-3095 (LTS) (S.D.N.Y. Mar. 26, 2008) [Doc. 1]; *Swanson*, No. 08-cv-3139 (LTS) (S.D.N.Y. Mar. 27, 2008) [Doc. 1]. On April 4, 2008, Defendants submitted a letter to the Court requesting that these later-filed cases be assigned to this Court as related to this action, for coordinated proceedings. (*See* Defs.' Letter to the Court, Apr. 4, 2008, Davidow Decl. Ex. C.) In their written responses to Defendants' request, all plaintiffs raised the issue of arbitrability, with the putative class action plaintiffs attempting to differentiate those actions as non-arbitrable by virtue of the exclusion of class actions from arbitration. (*See* Finn Letter to the Court, Apr. 10, 2008 ("Finn Letter"), Davidow Decl. Ex. D, at 1; LHB Letter to the Court, Apr. 9, 2008, Davidow Decl. Ex. E, at 2 & n.1; Swanson Letter to the Court, Apr. 9, 2008, Davidow Decl. Ex. F, at 2.) The *LHB* and *Swanson* cases were transferred to this Court on April 17, 2008.

In his letter to the Court, Plaintiff argued that his individual claims in this action are non-arbitrable because he is a putative class member in the *LHB* and *Swanson* actions. (*See* Finn Letter, Davidow Decl. Ex. D, at 1.) He did not contest the existence or validity of the binding arbitration agreement with Defendants. To the contrary, he used the provision of that agreement relating to class actions as a shield. Yet he indicates (as we read his letter) that he wishes to pursue his claims as an individual, not as a member of the class: "And because his core claims have been duplicated by later filed putative class actions, if judicial economy, the rules, and other considerations lean toward consolidation of such under Judge Swain, then they should be without regard to the individual nature of his action." (*Id.* at 2.)

4

In response to the Court's inquiry as to Defendants' intentions regarding arbitration, Defendants informed the Court by letter, dated April 14, 2008, that they could not move to compel arbitration at this time because of the pendency of the related class actions. Defendants stated their intention to file this Motion. (*See* Defs.' Letter to the Court, Apr. 14, 2008, Davidow Decl. Ex. G.) Plaintiff responded in a letter to the Court, dated April 16, 2008. (*See* Pl.'s Letter to the Court, Apr. 16, 2008, Davidow Decl. Ex. H.)

## ARGUMENT

**I.     Plaintiff Is Subject to an Uncontested, Valid and Binding Arbitration Agreement, the Enforcement of Which Is Mandatory Under the FAA**

Plaintiff does not dispute the existence or terms of his binding arbitration agreement with Smith Barney.[4] Federal statutory and case law require the strict enforcement of such agreements in accordance with their terms.

The FAA requires judicial enforcement of a wide range of arbitration provisions in written contracts "involving commerce." 9 U.S.C. § 2. Specifically, Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable* . . . .

*Id.* (emphasis added).

---

[4]     Defendants CGMI, Citigroup and Williams, although not signatories to the arbitration agreement, also are entitled to compel arbitration of Plaintiff's claims and therefore also are entitled to move this Court for a stay of these proceedings. A non-signatory may compel a signatory's claims to arbitration where "'the relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *JLM Indus., Inc.* v. *Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (quoting *Choctaw Generation Ltd. P'ship* v. *Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001)) (holding that parent companies could invoke arbitration agreements signed by subsidiaries).

Plaintiff's account agreement relates to an investment account through which Plaintiff has made investments in national securities markets. Because the account agreement, including the explicit agreement to arbitrate, is in writing and indisputably involves commerce, the provisions of the FAA are applicable and mandatory.

Moreover, if the allegations in the Complaint even "touch matters" covered by the agreement, then those claims must be arbitrated pursuant to the FAA. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985); *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). In these circumstances, a court has no discretion and must compel arbitration:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (emphasis added). The Supreme Court has affirmed that, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4).

The FAA reflects a powerful public policy favoring arbitration and requiring courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 625-26 (citation omitted). "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998); *see also Air China Ltd. v. Li*, No. 07 Civ. 11128(LTS)(DFE), 2008 WL 754450, at *1 (S.D.N.Y. Mar. 17, 2008) (Swain, J.). Courts must therefore favor arbitration and resolve doubts concerning the coverage of arbitration agreements by reading such provisions broadly and with a preference for arbitration. *See Southland*

*Corp.* v. *Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Forrest* v. *Unifund Fin. Group, Inc.*, No. 04 Civ. 5151 LTS, 2007 WL 766297, at *5 (S.D.N.Y. Mar. 13, 2007) (Swain, J.).[5]

## II. Under the Arbitration Agreement, Plaintiff Has Two Options: Pursue His Claims As a Member of a Class or Submit His Individual Claims to Arbitration

The Court should not allow Plaintiff to proceed through motion practice and possibly discovery where, as here, there is no scenario under which he can litigate the case to a conclusion. The Court should instead stay Plaintiff's action until it is determined whether the putative class of which Plaintiff is a member will be certified. At that time, this action can either be dismissed so he can proceed as a class member, or be compelled to arbitration if class certification is denied or he elects not to proceed as a class member. The courts have repeatedly resolved similar situations in this manner.

The provisions of the arbitration agreement relating to class actions are based on rules promulgated by the National Association of Securities Dealers ("NASD"), now known as the Financial Industry Regulatory Authority ("FINRA").[6] The rule was originally adopted for the

---

[5] The statutory and case law of New York are to the same effect. *See* N.Y. C.P.L.R. § 7501 *et seq.* (McKinney 2005). Section 7503(a) of the New York Civil Practice Law and Rules says that "[w]here there is no substantial question whether a valid agreement was made . . . the court shall direct the parties to arbitrate." "The policy of this State is to favor and encourage arbitration as a means of expediting the resolution of disputes and conserving judicial resources." *Rio Algom Inc.* v. *Sammi Steel Co.*, 562 N.Y.S.2d 486 (N.Y. App. Div. 1st Dep't 1990).

[6] NASD Rules 12204(d) (Customer Code) and 13204(d) (Industry Code) state:

> A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:
> - The class certification is denied;
> - The class is decertified;
> - The member of the certified or putative class is excluded from the class by the court; or

7

express purpose of excluding class action claims from NASD arbitration proceedings. *See* Order Approving Proposed Rule Change Relating to the Exclusion of Class Actions From Arbitration Proceedings, 57 Fed. Reg. 52659-02 (Nov. 4, 1992). The Securities and Exchange Commission commented that such a rule would "promote the efficient resolution of these securities-based class action disputes" and end the practice of "both investors and broker-dealers hav[ing] been put to the expense of wasteful, duplicative litigation." *Id.* at 52661.

Plaintiff seeks to turn the rules' purpose on its head. Rather than "promoting the efficient resolution of class action disputes," his interpretation would bring additional individual claims into the courts. Rather than limiting arbitrability only in cases in which the claims will be adjudicated through a more efficient process, it would limit arbitrability based on the happenstance of a separate proceeding, the outcome of which will not resolve the individual claims that are at issue.

The courts have overwhelmingly granted stays under these circumstances. For example, in *Wilson, et al.* v. *Deutsche Bank AG, et al.*, No. 1:05-cv-03474 (N.D. Ill.), the plaintiffs sued defendants with respect to a tax shelter arrangement. Defendants raised the existence of an arbitration agreement containing terms identical to those present here. Plaintiffs sought to avoid arbitration by virtue of the pendency of a class action, as to which they were class members, in another court. The court granted a stay, relying on the NASD rule and implementing SEC order:

---

- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

This paragraph does not otherwise affect the enforceability of any rights under this Code or any other agreement.

*See* Order Approving Proposed Rule Change and Amendments to Amend NASD Arbitration Rules for Customer Disputes and Industry Disputes, 72 Fed. Reg. 4574-01, 4575, 4580-81 (Jan. 31, 2007).

> Nothing in the Rule or the SEC notice supports plaintiffs' interpretation. Accepting plaintiffs' position would mean that the existence of a putative class action would result in more individual litigation in the courts, not less, just the opposite of the desired intent. Under plaintiffs' view, they cannot initiate arbitration against defendants because of the existence of the <u>Denny</u> class action, but somehow they can initiate and proceed with individual cases in federal court. This is obviously not the intent of the Rule, which was to exclude class claims from arbitration while requiring arbitrations of individual claims. "The commission believes that investor access to the courts should be preserved for class actions . . . ." <u>Id.</u>
>
> Plaintiffs cannot have it both ways. They can either elect to litigate in court as a member of the <u>Denny</u> class action, or they can opt out of that case and arbitrate their claims individually. They cannot, however, rely on the <u>Denny</u> class action to individually litigate their claims in this court.

*Wilson*, No. 1:05-cv-03474, at 5-6 (N.D. Ill. Mar. 20, 2006) (citing SEC Release No. 34-31371, 1992 WL 316267 (Oct. 28, 1992)).[7]

Similarly, in *Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710 (N.D. Ill. 2006), the court ordered a stay of the individual proceedings even after an overlapping class action had been certified in another forum, based on the understanding that "the disputes are still ultimately referable to arbitration if they are not resolved in the class action." *Id.* at 729. Citing the strong federal policy that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *id.* at 730 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25), the *Olson* court explained:

> In the absence of a stay of litigation, [Defendant's] right to arbitrate will be effectively nullified. The arbitration agreement between [Defendant] and Plaintiffs unambiguously states that the arbitration agreement shall not be enforced *until* Plaintiffs are excluded from the class action . . . the agreement presumes that any disputes remain ultimately referable to arbitration until the designated event: which has not occurred yet in this case.

*Id.* Many other courts have reached the same conclusion. *See, e.g., Ingstad v. Grant Thornton, LLP*, No. 3:05-cv-98, 2006 WL 3751204, at *3, 6 (D.N.D. Dec. 19, 2006); *MLDX Invs., LLC v. Parse*, No. 2:06-

---

[7] A copy of the *Wilson* opinion is attached as Exhibit I to the Davidow Declaration.

CV-00121 PGC, 2006 WL 1579597, at *4 (D. Utah June 1, 2006); *Crunk, et al. v. BDO Seidman, L.L.P., et al.*, No. 2:04-cv-02573-JPM-tmp, at 5-6 (W.D. Tenn. May 24, 2005);[8] *Hansen v. KPMG, LLP*, No. CV 04-10525-GLT (MANx), 2005 WL 6051705, at *3 & n.7 (C.D. Cal. Mar. 29, 2005); *Plyler v. BDO Seidman, L.L.P.*, No. 04 2146 B/AN, 2004 WL 5039849, at *3 (W.D. Tenn. Dec. 29, 2004), *adopted by Plyler v. BDO Seidman, L.L.P.*, No. 04 2146 B/AN, 2005 WL 4904453, at *1 (W.D. Tenn. Apr. 8, 2005); *see also Hudson v. Deutsche Bank AG*, No. 05 C 6783, 2007 WL 1018137, at *4 (N.D. Ill. Mar. 30, 2007). *But see Blythe v. Deutsche Bank AG*, No. 04 Civ. 5867(SAS), 2005 WL 53281, at *7 (S.D.N.Y. Jan. 7, 2005) (denying stay where many individual claims were not covered by arbitration agreement and class action case was "effectively dead in the water").

As these other courts have concluded, judicial efficiency as well as the federal policy in favor of arbitration agreements will be best served by staying this case until it is determined whether Plaintiff will proceed as a class member or in arbitration. Alternatively, if Plaintiff prefers to avoid any delay with respect to his individual claims, he may elect to submit those individual claims to arbitration.

### III. This Court Has the Authority to Stay the Proceedings Until the Arbitration Agreement Is Satisfied

The law is clear that this Court has the authority to stay these proceedings. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This Court therefore has broad discretion to grant a stay when it serves the interests of judicial economy and efficiency. *See Weisman v. Se. Hotel Props. Ltd. P'ship*, No. 91 Civ. 6232 (MBM), 1992 WL 131080, at *6 (S.D.N.Y. June 1, 1992)

---

[8] A copy of the *Crunk* opinion is attached as Exhibit J to the Davidow Declaration.

(citing *Wright, Miller & Cooper, Federal Practice and Procedure* § 3866 (1986)). "A stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery." *ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967); *see also LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) ("a court might, in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed").

Courts in this District generally look to five factors in determining whether to exercise discretion and grant a motion to stay: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007) (quoting *LaSala*, 399 F. Supp. 2d at 427). All applicable factors of this balancing test weigh in favor of the Court granting a stay.[9]

The first factor of the balancing test unquestionably weighs in favor of the Court granting a stay. Plaintiff would not be prejudiced by a stay of these proceedings: if he ultimately becomes a member of the plaintiff class, his claim will be resolved with the class actions; if he does not, he must arbitrate in any event and this lawsuit's timing will be irrelevant. This is not a case where "a litigant . . . [is] be[ing] compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory*

---

[9] The fourth factor is not directly applicable here.

11

*Co.*, No. 01 Civ. 1044(RJH)(HBP), 2005 WL 912184, at *2 (S.D.N.Y. Apr. 19, 2005) (quoting *Landis*, 299 U.S. at 255).

Moreover, this would not be a stay of indefinite duration. The stay would presumably be lifted by the Court if and when it is determined, for whatever reason, that Plaintiff's claims will not be resolved in the related putative class actions. In addition, Plaintiff has the option of avoiding the stay altogether by seeking exclusion from the class and submitting his individual claims against the Defendants to arbitration, as is provided for in his account agreement with Smith Barney.

The second factor of the balancing test also weighs in favor of the Court granting a stay of these proceedings. Unlike Plaintiff, who would not be prejudiced by a stay, Defendants would suffer a significant burden if a stay is not imposed and Plaintiff is permitted to litigate his individual claims at this time. Specifically, Defendants would be deprived of their contractual right to arbitrate Plaintiff's individual claims and that right, once lost, could not be restored to the Defendants. Furthermore, if a stay is not granted, Defendants would also be forced, unnecessarily, simultaneously to litigate Plaintiff's claims on both an individual and a class basis.

The third factor weighs in favor of a stay as well. Permitting Plaintiff to simultaneously litigate his claims on both an individual and a class basis plainly is contrary to the interests of judicial economy. This is a case that cannot ultimately proceed as an individual action in court; it is a waste of the Court's time to preside over proceedings on this sort of interim basis.

Finally, the public interest, as Congress and the Supreme Court have articulated it, supports the enforcement of arbitration agreements. "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd*, 134 F.3d at 76; *see also Air China Ltd.*, 2008 WL 754450, at *1.

Under these circumstances, a stay is appropriate.

## CONCLUSION

For the reasons set forth above, this lawsuit should be stayed until class certification is denied or Plaintiff elects to be excluded from the putative plaintiff class in *LHB* and *Swanson*, including a stay of Defendants' obligation to respond to the Complaint.

Dated: May 6, 2008
New York, New York

> Respectfully submitted,
>
> PAUL, WEISS, RIFKIND, WHARTON &
> GARRISON LLP
>
> By: _____/s/ Brad S. Karp_____
>
> Brad S. Karp
> Susanna M. Buergel
> 1285 Avenue of the Americas
> New York, New York  10019-6064
> Tel.   (212) 373-3000
> Fax   (212) 757-3980
> bkarp@paulweiss.com
> sbuergel@paulweiss.com
>
> Charles E. Davidow
> 1615 L Street, N.W.
> Washington, D.C. 20036-5694
> Tel.   (202) 223-7300
> Fax   (202) 223-7420
> cdavidow@paulweiss.com
>
> *Attorneys for Defendants Smith Barney, Citigroup Global Markets Inc., Citigroup Inc., and Brian Williams*