UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN FINN,

Plaintiff,

v.

SMITH BARNEY, CITIGROUP GLOBAL
MARKETS INC., CITIGROUP INC., BRIAN
WILLIAMS, and DOES 1 THROUGH 20, inclusive,

Defendants.

Case No. 08-cv-2975 (LTS) (KNF)

JUDGE LAURA T. SWAIN

**DECLARATION OF
CHARLES E. DAVIDOW**

I, Charles E. Davidow, declare as follows:

1.      I am an attorney at Paul, Weiss, Rifkind, Wharton & Garrison LLP and counsel for Defendants Smith Barney, Citigroup Global Markets Inc., Citigroup Inc., and Brian Williams (collectively "Defendants"), and am a member of the bar of this Court.  I submit this declaration in support of Defendants' Motion to Stay the Proceedings.

2.      Attached as Exhibit A is a true and correct copy of a document entitled "Account Application, Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number."  The document attached as Exhibit A appears to have been executed by Plaintiff on July 9, 2004.  The document has been redacted pursuant to Federal Rule of Civil Procedure 5.2(a).

3.      Attached as Exhibit B is a true and correct copy of a document entitled "Financial Management Account Upgrade Application" and an accompanying document entitled "Financial Management Account Agreement."  The document attached as Exhibit B appears to have been executed by Plaintiff on March 6, 2006.  The document has been redacted pursuant to Federal Rule of Civil Procedure 5.2(a).

4.      Attached as Exhibit C is a true and correct copy of Defendants' Letter to the Court, dated April 4, 2008, without the accompanying exhibits.

5.      Attached as Exhibit D is a true and correct copy of Plaintiff's Letter to the Court, dated April 10, 2008.

6.      Attached as Exhibit E is a true and correct copy of LHB Insurance Brokerage Inc.'s Letter to the Court, dated April 9, 2008.

7.      Attached as Exhibit F is a true and correct copy of Lisa Swanson's Letter to the Court, dated April 9, 2008.

8.      Attached as Exhibit G is a true and correct copy of Defendants' Letter to the Court, dated April 14, 2008.

9.      Attached as Exhibit H is a true and correct copy of Plaintiff's Letter to the Court, dated April 16, 2008.

10.     Attached as Exhibit I is a true and correct copy of the March 20, 2006 opinion in *Wilson, et al.* v. *Deutsche Bank AG, et al.*, No. 1:05-cv-03474 (N.D. Ill.).

11.     Attached as Exhibit J is a true and correct copy of the May 24, 2005 opinion in *Crunk, et al.* v. *BDO Seidman, L.L.P., et al.*, No. 2:04-cv-02573-JPM-tmp (W.D. Tenn.).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May 6, 2008.

_Charles E. Davidow_

2

# Account Application, Client Agreement and Substitute Form
# W-9 Request for Taxpayer Identification Number

**SMITH BARNEY**
citigroup

| Account Number: | | Account Address: |
|---|---|---|
| Branch | Account | LT IC FC | **Mailing Address for this account(s)** Street Address/P.O. Box ___ Apt. |
| **Account Ownership/List all account owners:** | | City **Bovina**  State **NY**  ZIP **13740** |
| John Finn | | **Permanent/ Legal Address for this account(s) (if different)** Street Address ___ Apt. |
| | | City ___ State ___ ZIP ___ |

U.S. Federal law requires us to obtain, verify and record information that identifies each person or entity that opens an account. What this means for you is that when you open an account, we will ask for your name, a street address, date of birth, and an identification number, such as a Social Security No. or other identification number, that Federal law requires us to obtain. We may also ask to see a driver's license, corporate formation document (for corporate entities), or other identifying documents that will allow us to identify you or the corporate entity seeking to open an account. We appreciate your cooperation.

| **Date of Birth of Account Owner named first above:** Month ___ Day ___ Year **70** | **Citizenship:** ☐ U.S.   ☐ U.S. Permanent Resident Alien   Country of citizenship to ____ |
|---|---|

**This account is for (check appropriate box):** ☐ Individual/Sole Proprietor  ☐ Corporation  ☐ Partnership  Specify Other: ____

**Enter the Social Security Number of the Account Owner named first above OR the Employer Identification Number (if not an individual):**  Social Security No. _____  **OR**  Employer Identification No. _____

Daytime ____  Evening ____  Fax No. ____  E-mail Address: ____

**Alternate Mail Instructions:** Complete this section if you desire another individual to receive mail on your behalf. The individual you designate MUST qualify as a "special custodian," which is defined as someone who: is not authorized to withdraw funds or securities from your account, AND; is not authorized to place orders or move assets for you, AND; is not affiliated with, a broker/dealer or registered investment advisor.

Please direct all communications, including trade confirmations and monthly statements, for my account indicated above, to the special custodian designated below. This instruction will remain in effect until written notice to the contrary is received by you at the branch office servicing my account. (See Paragraph 12 Page 4)

Name ____  Street Address ____

City ____  State ____  ZIP ____

| **Borrowing Privilege** | Portfolio CreditLine® allows you to borrow against the value of eligible securities in your account for almost any investment, personal or business purpose. Eligible accounts will have Portfolio CreditLine borrowing privileges unless you decline below. See accompanying literature for an explanation of Portfolio CreditLine borrowing. ☐ We do not want Portfolio CreditLine borrowing privileges in my/our account. Please note that you may not obtain an FMA Card (below) if you check this box. |
|---|---|
| **Smith Barney Access®** | With Smith Barney Access® you can view account information, stock quotes, research and other information on the Internet. Enrollment is easy at www.smithbarney.com Speak to your Financial Consultant for your free SB Access Internet Bill Pay service.  *Mother's Maiden Name is required to enroll online:* ____ |
| **FMA Checking** | Checkwriting privileges provide you with convenient access to your money. All check information is reported on your monthly statement, including payee name and date written. Expense codes give you the option to categorize payments for tracking on your monthly and year-end statements. *Please select your printing preference:* ☐ Name and address  ☐ Name only; no address  *Please select your check style:* ☐ Wallet size  ☐ Executive (additional charge)  ☐ Corporate (additional charge)  *Multiple owner accounts—please tell us if one or two signatures are required to authorize checks:* ☐ One signature required  ☐ Two signatures required |
| **FMA Card** | The FMA Card is a Gold MasterCard® debit card that gives you easy access to cash at over 600,000 ATM machines and purchasing power at over 19 million locations. Enroll in our optional Travel & Rewards program and earn points towards exciting merchandise, restaurant and air travel rewards with every quality-ing purchase. No annual card fee applies. |

| *How should the account owner's (primary cardmember's) information appear?* | Account Owner's Name should appear as: ____   Home Phone Number ____ |
|---|---|
| | Social Security Number ____   Mother's Maiden Name ____ |
| *How should the account co-owner's information appear?* | Account Co-owner's Name should appear as: ____   Home Phone Number ____ |
| | Social Security Number ____   Mother's Maiden Name ____ |

**Travel & Rewards** ☐ Yes, sign my FMA Card(s) up for the Travel & Rewards program so I can begin earning points with my first eligible purchases. *A $50 annual membership fee may apply.*

| **Additional FMA Privileges** | The following services are also available when you establish your FMA account. Speak with your Financial Consultant for more details. |
|---|---|

☐ **Direct Deposit.** Your employer, pension plan or Social Security can send payments directly to your account. Contact the payer directly to enroll.

Idle cash will be swept daily into your choice of:
☐ Bank Deposit Program—FDIC-insured deposits in affiliated Citigroup banks (Note: not available for managed accounts or business accounts).
☐ Tax-free money market fund selection.
☐ Insured savings deposits through the IDA feature.

☐ **Dividend Reinvestment.** Reinvest dividends into additional shares without transaction fees. Speak to your Financial Consultant to select which dividends to reinvest.

Smith Barney is a division and service mark of Citigroup Global Markets Inc.



* 3 0 2 6 *

Account Number
Branch | Account         IT  IC  FC

## FMA Automatic Funds Transfers

Transfer money by phone between your FMA and bank account. You may also transfer to another Smith Barney account that has been linked to your FMA account for statement reporting purposes.

*Attach a voided check or a letter from your bank confirming the account number, title, account type (checking or savings) and the bank routing number (not required for transfers to Smith Barney Accounts). Your bank account must have the name of at least one FMA account owner in the title. Speak to your Financial Consultant for trust and estate ownership requirements.*

Financial Institution ☐ Check if Credit Union | Account Number | Type of Account: ☐ Checking ☐ Savings

Select your Telephone Authorization Code: (numbers only): | SB Access AFT: Contact your Financial Consultant to obtain Electronic Client ID or to enable an existing one.

**OPTIONAL - Complete only if you wish to establish monthly or biweekly recurring transfers.**
☐ Check here for recurring transfers INTO your FMA account FROM your bank account.
☐ Check here for recurring transfers FROM your FMA account INTO your bank account.
Amount of Transfer | Monthly, on the ____ day of each month (specify the 1st through 26th) or Biweekly on ☐ Mon ☐ Tue ☐ Wed ☐ Thu ☐ Fri

**Complete this section only if your bank account title includes someone who is not a co-owner of your FMA.**
I authorize Smith Barney ("SB") to initiate transfers and make adjustments for entries made in error to or from my account indicated above, in accordance with the terms of the FMA Agreement, which I have read and agree to. This authorization is to remain in full force and effect until SB has received notification from me of its termination.

Account title | Signature of non-FMA owner(s) | Date

## Quicken® or Microsoft® Money

With a Smith Barney Financial Management Account, you may track your account transactions and activity with Quicken®, QuickBooks® or Microsoft® Money software. Fees may apply. Please ask your Financial Consultant for an application.

## FMA Plus℠

☐ Establish my account as an FMA PLUS. I will benefit from: fee waivers on up to 100 ATM withdrawals per year with your FMA Card, no monthly fee for downloading data to Quicken or Microsoft Money, a complimentary IRA linked to my account, and premier statement reporting. Speak with your Financial Consultant for details on statement reporting and IRA services. Not available for Business FMA accounts.

## Name Disclosure

The issuers of securities we hold for you in street name may request your name, address and securities position. This information will not be released if you check this box: ☐

Bank issued certificates of deposit purchased through Smith Barney, the Smith Barney Bank Deposit Program℠ and the Smith Barney Insured Deposit Account sweep feature are insured by the FDIC (see disclosure documents for details). All other investment or insurance products sold through Smith Barney:
•are not insured by the FDIC;
•are not a deposit or other obligation of a depository institution and are not guaranteed by a depository institution;
•are subject to investment risks, including the possible loss of the principal amount invested.

In consideration of Citigroup Global Markets Inc. ("you") accepting an account for me/us, I/we ("I") acknowledge that I have read, understand and agree to the terms of the attached Client Agreement in sections 1 through 11. If this is a multiple party account, I/we further acknowledge that I/we have read, understand and agree to the terms of the attached Client Agreement contained in sections 12 through 14. If I have requested Smith Barney Access, I have read, understand, and agree to the terms of the Smith Barney Access Agreement. If I have requested any of the services referenced in the FMA sections above. I agree to the terms of the FMA Agreement that has been provided to me and understand that both an account minimum balance and annual fee apply. I authorize you to establish checking privileges, Online Services and the Automatic Funds Transfer service, and to have the FMA Card(s) issued as instructed on this Account Application, and I affirm that I have the authority to open this account. I authorize you and the FMA Card Issuer to have FMA Card(s) issued as indicated. I understand that this account is governed by the FMA Agreement, the Client Agreement, the Online Services Agreement, my agreement with the FMA Card issuer, the Bank Deposit Program Disclosure Document, the IDA Disclosure Document, and/or other agreements I may have with you or other providers of services related to the FMA account. I have read all those documents and agree to their terms.

If this account is established with Portfolio CreditLine privileges, I further acknowledge that I have read, understand and agree to the terms of the attached Client Agreement contained in sections 15 through 17 and that my/our securities may be loaned to you or loaned out to others.

**Tax Certification: Under penalties of perjury I certify that:**
1.) the number I have provided above is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
2.) I am not subject to backup withholding because: a.) I am exempt from backup withholding, or b.) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or c.) the IRS has notified me that I am no longer subject to backup withholding.
3.) I am a U.S. person (including a U.S. resident alien)
**Certification Instructions:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

*Smith Barney requires your consent to the applicable provisions of this Agreement in order to open and maintain your account.*

**All account owners must sign.**

*If FMA Checking is requested, please sign as you will normally sign your checks.*

I acknowledge that I have received the Client Agreement which contains a pre-dispute arbitration clause on page 3, section 6.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Account Owner's Signature _____ Date 7-9-04
Co-owner's Signature _____ Date

For Office Use Only:
FMA Checking

3026 (10/2003) page 2 of 4

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

## CLIENT AGREEMENT

In consideration of your opening one or more accounts for me ("we", "us" and "our" are each substituted for "I", "me" and "my", respectively, in the case of multiple account holders, corporations and other entities), and your agreeing to act as broker/dealer for me for the extension of credit and in the purchase or sale of securities, commodities, options and other property, it is agreed in respect to any and all accounts, whether upon margin or otherwise, which I now have or may at any future time have with Citigroup Global Markets Inc. or its direct or indirect subsidiaries and affiliates or their successors or assigns (hereinafter referred to as "you", "your", "SB" or "Smith Barney"), that:

1. All transactions entered into under this Agreement shall be subject to any applicable constitution, rules, regulations, customs and usages of the exchange or market and its clearinghouse, if any, where such transactions are executed by SB or its agents and to all applicable laws, rules and regulations of governmental authorities and self-regulatory agencies. Such reference to the "constitution, rules, regulations, customs and usages of the exchange" shall in no way be construed to create a cause of action arising from any violation of such constitution, rules, regulations, customs and usages. If any provision is enacted that would be inconsistent with any of the provisions of this Agreement, the provision so affected shall be deemed modified or superseded by the enactment, but the remaining provisions of this Agreement shall remain in effect. Except as herein provided, no provision of this Agreement may be waived, altered, modified or amended unless the same is in writing and signed by an authorized official of SB.

2. I agree that all property which I own or in which I have an ownership interest, whether owned individually, jointly or in the name of another person or entity, which at any time may be in your possession or control for any purpose, including safekeeping, shall be subject to a continuing security interest, lien and right of set-off for the discharge and satisfaction of any debts or obligations however arising that I may owe to SB at any time and for any reason. SB may at its discretion hold such property until my debts or obligations to SB are fully satisfied or SB may apply such property and the proceeds of the liquidation of such property toward the satisfaction of my debts and obligations and I will remain liable to SB for any deficiency. In enforcing your security interest, you shall have the discretion to determine which property is to be sold and the order in which it is to be sold and shall have all the rights and remedies available to a secured party under the New York Uniform Commercial Code. Without your prior written consent, I will not cause or allow any of the collateral held in my account(s), whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than your security interest

Without limiting the generality of the foregoing, I hereby authorize SB to automatically liquidate any money market fund shares or withdraw any savings deposit balances available in my account(s) from time to time to cover any of my indebtedness or obligations to SB including non-trade related debts. You are further authorized to liquidate any other property held in my account(s) to satisfy any such indebtedness or obligations whenever in your discretion you consider it necessary for your protection.

You are hereby authorized without further direction from me to automatically deposit or "sweep" all the free credit balances in my account into one or more FDIC insured depository institutions ("Program Banks") affiliated with you as more particularly set forth in the disclosure document which I represent that I have read and by which I agree to be bound. I understand that you may amend the list of Program Banks and that I may eliminate any Program Bank from the list at any time. If my free credit balances that are swept into the Program Banks reach the maximum amount that I have authorized you on my behalf to deposit or that may be so deposited under the Bank Deposit Program ("Program"), you are authorized to sweep, without further direction from me, my excess eligible free credit balances into the SB Money Fund portfolio that I have chosen.

I acknowledge (i) that I am responsible to monitor the total amount of deposits I have at each Program Bank in order to determine the extent of Federal Deposit Insurance Corporation insurance coverage available to me, and (ii) that SB is not responsible for any insured or uninsured portion of my deposits at any of the Program Banks.

I understand that I may instruct you not to sweep the free credit balances in any of my accounts into a Program Bank account but instead to sweep such free credit balances into a tax exempt money market fund. If I so instruct you, you are authorized, without further direction from me, to invest any eligible free credit balances in any of my accounts in the tax exempt money market fund you make available and that I have chosen.

If I have elected the Insured Deposit Account ("IDA") feature as my sweep, you are authorized without further direction from me to invest eligible free credit balances in my accounts in savings deposits at the depository institutions in the order set forth on the list furnished to me from time to time. I understand that you may amend the list of depository institutions and that I may eliminate depository institutions from the list at any time. If my funds invested through the IDA feature reach the maximum amount that I have authorized you to so invest or that may be so invested, you are authorized to invest excess eligible free credit balances in the money market fund I have chosen or you have chosen pursuant to my authorization. I have read the IDA Disclosure Document and agree to be bound by its terms and conditions.

"Property" as used anywhere in this Agreement shall include, but not be limited to, investment property, securities and commodities accounts, securities of all kinds, money, savings deposits, certificates of deposit, bankers' acceptances, commercial paper, options, commodities, and contracts for the future delivery of commodities or relating to commodities or securities, and the distributions, proceeds, products and accessions of any of the above. All property held in a securities account shall be treated as a financial asset under Article 8 of the New York Uniform Commercial Code.

3. In case of the sale of any security, commodity, or other property at my direction and the inability of SB to deliver the same to the purchaser by reason of my failure to supply them to SB, I authorize SB to borrow any security, commodity, or other property necessary to make delivery thereof, and I hereby agree to be responsible for any loss which SB may sustain thereby and any premiums, interest or other costs which SB may be required to pay as a result of such borrowing, and for any loss or cost which SB may sustain by reason of its inability to borrow the security, commodity, or other property sold.

I agree that if I utilize your services to receive or issue funds by wire (wire transfers), I am responsible for the issuance of accurate and complete instructions in relation to said wire transfers and I will hold you harmless from all liabilities if I fail to fulfill this responsibility. I further agree that should I incur a loss in connection with a wire transfer as a result of negligence or other activities on your part, your liability will be limited to the actual amount of the misdirected or misapplied funds and no other damages of any other nature including consequential damages will be recoverable.

You may charge my account(s) with such usual and customary charges as you may determine to cover your services and facilities, including, but not limited to, custody, transaction and termination fees. In addition, you may charge an inactivity fee which once charged, shall be non-refundable. I will promptly pay SB any deficiency that might arise in my account(s). I understand and agree that a finance charge may be charged on any debit balance in any cash account I have with SB in accordance with the terms described in the SB literature previously provided to me and any subsequent modifications thereto which will be provided to me. You may transfer excess funds between any of my accounts (including commodity accounts) for any reason not in conflict with the Commodity Exchange Act or any other applicable law. If any transactions are effected on an exchange in which a foreign currency is used, any profit or loss as a result of a fluctuation in the exchange rate will be charged or credited to my account(s).

4. Communications may be sent to the mailing address on file with you, or at such other address as I may hereafter give in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to me personally, whether actually received or not. I acknowledge that the rules of the Securities and Exchange Commission require that certain communications be sent to me rather than an agent acting on my behalf. I warrant that the address currently on file with you is an address where I personally receive communications unless it is the address of a qualified custodian as defined by the Securities and Exchange Commission. Transactions entered into for my account(s) shall be confirmed in writing to me where required by applicable law or regulation. In addition, SB shall provide me with periodic statements reflecting activity in such account(s). I agree that transactions reflected on such confirmations and statements shall be conclusively deemed accurate as stated unless I notify SB in writing within three (3) days and ten (10) days of receipt, respectively, that the information contained in such confirmation or statement is inaccurate. Such notice must be sent by me to SB by telegram or letter directed to the attention of the Branch Office Manager of the office servicing the account. Failure to so notify SB shall also preclude me from asserting at any later date that such transaction was unauthorized.

I authorize you at your discretion to obtain reports and to provide information to others concerning my credit standing and my business conduct. You may ask credit reporting agencies for consumer reports of my credit history. Upon my request you will inform me whether you have obtained any such consumer reports and if you have, you will inform me of the name and address of the consumer reporting agency that furnished the reports to you.

5. I hereby represent that I am of the age of majority. Unless I advise you to the contrary, in writing, and provide you with a letter of approval from my employer, where required, I represent that I am not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of any corporation, firm or individual engaged in the business of dealing, either as a broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper. I further represent that no one except those signing this agreement has an interest in my account.

If my account has been introduced to you and is carried by you only as a clearing broker, I agree that you are not responsible for the conduct of the introducing broker and your only responsibilities to me relate to the execution, clearing and bookkeeping of transactions in my accounts.

### 6. Arbitration

- **Arbitration is final and binding on the parties.**
- **The parties are waiving their right to seek remedies in court, including the right to jury trial.**
- **Pre-arbitration discovery is generally more limited than and different from court proceedings.**
- **The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**
- **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me,

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member. I may elect which of these arbitration forums shall hear the matter by sending a registered letter or telegram addressed to Smith Barney at 77 Water Street, New York, N.Y. 10005, Attn: Law Department. If I fail to make such election before the expiration of five (5) days after receipt of a written request from SB to make such election, SB shall have the right to choose the forum.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with SB, and shall inure to the benefit of SB's present organization, and any successor organization or assigns; and shall be binding upon my heirs, executors, administrators, assigns or successors in interest. Should any term or provision of this Agreement be deemed or held to be invalid or unenforceable, the remaining terms and provisions shall continue in full force and effect. Except for statutes of limitation applicable to claims, this Agreement and all the terms herein shall be governed and construed in accordance with the laws of the State of New York without giving effect to principles of conflict of laws. The statute of limitations applicable to any claim shall be that which would be applied by the courts of the state in which I reside.

8. I understand that you may in your sole discretion prohibit or restrict trading of securities or substitution of securities in any of my accounts. You have the right to terminate any of my accounts (including multiple owner accounts) at any time by notice to me. The provisions of this agreement shall survive the termination of any account.

9. Your failure to insist at any time upon strict compliance with any term of this Agreement, or any delay or failure on your part to exercise any power or right given to you in this Agreement, or a continued course of such conduct on your part shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to you in this Agreement are cumulative and not exclusive of any other rights or remedies which you otherwise have.

10. I understand that SB shall not be liable for loss caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading, war, terrorist acts, strikes or other conditions, commonly known as "acts of God," beyond SB's control.

11. From time to time you may at your discretion, make loans to me for a purpose other than purchasing, carrying or trading in securities ("Express Credit Loans"). Express Credit Loans will be made in a nonsecurities credit account ("Express Credit Account"). The minimum and maximum amount of any particular loan may be established by you in your discretion regardless of the amount of collateral delivered to you and you may change such minimum and maximum amounts from time to time.

I agree not to use the proceeds of any Express Credit Loan to purchase, carry or trade in securities. I also agree not to use Express Credit Loan proceeds directly or indirectly to repay other debt that I incur for the purpose of purchasing, carrying or trading in securities.

12. If I have designated another individual to receive my communications from you pursuant to the Alternate Mail Instruction on Page 1, I agree that the instruction is applicable to all communications including but not limited to proxies, prospectuses, confirmations and statements of account. In consideration of your accepting and acting upon that instruction, I agree that all such communications shall be deemed for all purposes to have been personally received by me on the date indicated in such communication. I further agree to indemnify and hold harmless you, your officers, directors and employees from any and all liabilities arising from your compliance with these instructions and I hereby specifically waive any claims arising from my election to not promptly review transactions posted to my account.

**Additional Terms for Multiple Party Accounts**

**Paragraphs 13 through 15 apply only to multiple party accounts.**

13. If this is a multiple party account, in consideration of you and your successors carrying a multiple party account on margin or otherwise for the undersigned, each of us agrees to be jointly and severally liable for said account and to pay on demand any debit balance or losses at any time due in this account. Any of us has full power and authority to make purchases and sales, including short sales, to withdraw monies and securities from, or to do anything else with reference to our account, either individually or in our joint names, and you and your successors are authorized and directed to act upon instructions received from any of us and to accept payment and securities from any of us for the credit of this account. Notwithstanding the ability of each of us to control the account individually, we understand and agree that you may, at your sole option, require written instructions signed by all account owners when payments or transfers are requested. Any and all notices, communications, or any demands for margin sent to any of us shall be binding upon a.l, and may be given by mail or other means of communication. We hereby declare this account to be a joint tenancy with rights of survivorship unless we instruct you to establish another form of multiple ownership by executing a tenancy in common agreement, community property agreement, partnership agreement or other applicable agreement evidencing the desired form of ownership

14. Each of us agrees to hold SB harmless from and indemnify SB against any losses, causes of action, damages and expenses arising from or as the result of SB following the instructions of either or any of us. SB, in its sole discretion, may at any time suspend all activity in the multiple party account pending instructions from a court of competent jurisdiction or require that instructions pertaining to the multiple party account or the property therein be in writing signed by both or all of us. SB shall be entitled to recover from the account or from any of us prior to distribution of the funds or property therein such costs as it may incur, including reasonable attorney's fees, as the result of any dispute between or among us relating to or arising from the account.

15. Each of us agrees that, in the event of the death of either or any of us, the survivor or survivors shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such actions, require such papers, inheritance or estate tax waivers, retain such portion of the account and restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of either or any of us who shall have died shall be liable and each survivor shall continue liable, jointly and severally, to you for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by you of the written notice of the death of the decedent, or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

If this account contains rights of survivorship, in the event of the death of either or any of us, all assets in the account shall pass to and be vested in the survivor or survivors on the same terms and conditions as previously held, without in any manner releasing the decedent's estate from the liabilities provided for herein. The estate of the decedent(s) and the survivors hereby jointly and severally agree to fully indemnify and hold harmless SB from all liability for any taxes which may be owed in connection therewith or any claims by third parties.

**Margin Agreement**

**Paragraphs 16 through 18 apply only to Margin Accounts**

16. You are hereby authorized, without notice to me, and without regard to as to whether or not you have in your possession or under your control at the time thereof other property of the same kind and amount, to pledge, repledge, hypothecate or rehypothecate my property or any part thereof, either separately or together with other property of other clients, either for the amount due you from me or for a greater sum.

17. I agree to pay ON DEMAND any balance owing with respect to any of my accounts, including interest and commissions and any costs of collection (including attorneys' fees, if incurred by you). I understand that you may demand full payment of the balance due in my account plus any interest charges accrued thereon, at your sole option, at any time without cause and whether or not such demand is made for your protection. I understand that all loans made are not for any specific term or duration but are due and payable at your discretion upon a demand for payment made to me. I agree that all payments received for my account(s) including interest, dividends, premiums, principal or other payments may be applied by you to any balances due in my account(s). If I maintain both a cash and a margin account with you, you are authorized in your discretion to utilize the equity in either type of account in satisfaction of any maintenance margin requirement without the actual transference of funds or securities between such accounts.

Whenever you deem it necessary or appropriate for your protection, you are authorized, in your sole discretion, to sell, assign, transfer and deliver all or any part of my property which may be in your possession or control in any manner you deem appropriate, make any necessary purchases to cover short sales and/or any open commodity contract positions and/or to cancel any outstanding orders in order to close out the account. Without limiting the generality of the foregoing, such sale, purchase or cancellation may be made, in your sole discretion, on the exchange or other market where such business is then usually transacted, at public auction or at private sale without advertising the same. All of the above may be done without demand for margin or notice of purchase, sale or cancellation to me. No demand for margin, or notice given to me of intent to purchase or sell property or to cancel orders in my account, shall impose on you any obligation to make such demand or provide such notice to me. Any such notice or demand is hereby expressly waived, and no specific demand or notice shall invalidate this waiver. After deducting all costs and expenses of the purchase and/or sale and deliveries, including, but not limited to, commissions and transfer and stamp taxes, you shall apply the residue of the proceeds to the payment of any and all of my liabilities to you, and I shall remain liable for any deficiency. Upon any such sale, you may purchase the whole or any part thereof free from any right of redemption. In the event of my death or incompetency, the authority given by this Paragraph shall continue effective and shall be binding upon my personal representatives and heirs.

18. I will at all times maintain such margin for my account maintained by SB, as SB may require from time to time, and any debit balances arising in such account shall be charged interest in accordance with the terms described in the SB literature previously provided to me and any subsequent modifications thereto which will be provided to me. I am aware that interest charges, if not paid, will be added to the debit balance in my account for the next interest period. I am aware and agree that you may impose, for my account(s), margin requirements more stringent than those required by law or exchange regulations. I further understand and agree that such margin requirements may be changed and modified by you from time to time without prior notice to me. I further agree that any waiver by you or failure to promptly enforce, as to my account or that of others, such margin requirements shall not in any way prevent you from subsequently enforcing said margin requirements with regard to my account.

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

03/07/2006  09:34    12122061070                    JFA INC

# Financial Management Account℠
# Upgrade Application

**SMITHBARNEY**
citigroup℠

**Primary Account Owner**                              Account __ ____

Name  *John Finn*                                     Name

## Alternate Mail Instructions

Complete this section if you desire another individual to receive mail on your behalf. The individual you designate MUST qualify as a "special custodian," which is defined as someone who: is not authorized to withdraw funds or securities from your account, AND: is not authorized to place orders or move assets for you, AND: is not affiliated with a broker/dealer or registered investment advisor.

Please direct all communications, including trade confirmations and monthly statements, for my account indicated above, to the special custodian designated below. This instruction will remain in effect until written notice to the contrary is received by you at the branch office servicing my account. (See Paragraph 12 Page 4)

Name  *John Finn*                    Street Address

City  *Bevers*                        State  *NY*      ZIP  *13740*

☐ FMA. Yes, I would like to upgrade my account to an FMA account so I can immediately benefit from daily "sweep" of idle cash into the savings deposits established as my behalf through the Bank Deposit Program, access to the FMA Client Service Center, the optional Dividend Reinvestment Service and the features selected below. A $100 annual fee may apply.

☐ FMA PLUS. Make my account an FMA PLUS – all the benefits of an FMA account, plus unlimited free ATM withdrawals with the FMA card, two complimentary IRAs linked to my account, all also payment fees waived, and unlimited free check choices. A $150 annual fee may apply. Speak with your Financial Consultant for details on statement reporting and IRA services. Not available for Business FMA accounts.

☐ Business FMA. Yes, I would like to upgrade my business account to a BFMA account. Please note that Business Accounts will be automatically established as Business FMA. A $150 annual fee may apply.

☐ Additional Features: I already have an FMA/FMA PLUS/BFMA – please add the feature checked off below to my account. Additional fees may apply.

## ☐ Borrowing Privileges

Portfolio CreditLine® allows you to borrow against the value of eligible securities in your account for almost any investment, personal or business purpose. Eligible accounts will have Portfolio CreditLine borrowing privileges unless you decline below. See accompanying literature for an explanation of Portfolio CreditLine borrowing.

☐ We do not want Portfolio CreditLine borrowing privileges on my/our account. Please note that you may not obtain an FMA Card (below) if you check this box.

## ☐ Smith Barney Access℠ www.smithbarney.com

Using Smith Barney Access, our free internet-based service, you may view your investment portfolio, account activity, research and quote headlines, pay bills online, transfer funds electronically (AFT℠), receive electronic delivery of your statements, trade confirmations and other documents, customize your homepage, and secure e-mail to your Smith Barney Financial Consultant, and download information to your computer.

To enroll in Access, go to www.smithbarney.com. The primary account owner's mother's maiden name is required for online enrollment. If you have not already provided it in the Personal Information section above, please do so. Speak to your Financial Consultant regarding our free Smith Barney Access Internet Bill Pay service.

## ☐ Check Writing

Check writing privileges provide you with convenient access to your money. All check information is reported on your monthly statement, including payee name and date written. Expense codes give you the option to categorize payments for tracking your monthly and year-end statements.

Please select your printing preference: ☑ Name and address    ☑ Name only, no address

Please select your check style:    ☐ Wallet size    ☐ Executive (additional charge)    ☐ Corporate (additional charge)

Multiple owner accounts—please tell us if one or two signatures are required to authorize checks.

☑ One signature required    ☐ Two signatures required

521 R (10/2005) Page 1 of 3                    Smith Barney is a division and service mark of Citigroup Global Markets Inc.

## ☐ FMA Card

The FMA Card is a Gold MasterCard® that gives you easy access to cash at ATM machines and purchasing power wherever MasterCard is accepted. You can also use the FMA Card to deposit to and withdraw from your FMA account at Citibank Financial Centers in the U.S. and Puerto Rico. No annual card fee applies.

| How should the primary cardholder's name appear? | (maximum number of characters is 24) | SSN | Mother's Maiden Name | Access Level* |
|---|---|---|---|---|
| | *John Linn* | | | ☒ Full  ☐ Limited |
| How should the additional cardholder's name appear? | (maximum number of characters is 24) | SSN | Mother's Maiden Name | Access Level*  ☐ Full  ☐ Limited |
| How should the additional cardholder's name appear? | (maximum number of characters is 24) | SSN | Mother's Maiden Name | Access Level*  ☐ Full  ☐ Limited |
| How should the additional cardholder's name appear? | (maximum number of characters is 24) | SSN | Mother's Maiden Name | Access Level*  ☐ Full  ☐ Limited |
| How should the additional cardholder's name appear? | (maximum number of characters is 24) | SSN | Mother's Maiden Name | Access Level*  ☐ Full  ☐ Limited |

*A card holder designated as having Full Access will have the ability to withdraw funds directly from the related FMA account at a Citibank Teller in the U.S. and Puerto Rico, in an amount up to the total funds available in such FMA account. Total funds available include cash, savings deposits linked through your BDP, money fund balances and available margin loan value, minus uncleared funds and pending FMA Card transactions.

*A card holder designated as having Limited Access will have the ability to withdraw funds at a teller through a cash advance on the related FMA Card up to the lesser of 1) total cash available in the related FMA account or 2) the daily operating withdrawal limit set by Smith Barney.

If you do not select an Access Level, the card holder will be designated Full Access.

## ☐ Travel & Rewards

☐ Yes, sign my FMA Card(s) up for the Travel & Rewards program so I can begin earning points toward exciting merchandise, restaurant and air travel rewards with qualifying purchases. A $50 annual membership fee may apply.

## ☐ FMA Automatic Funds Transfers

Transfer money by phone between your FMA and bank account. You may also transfer to another Smith Barney account that has been linked to your FMA account for statement reporting purposes.

Attach a voided check or a letter from your bank confirming the account number, title, account type (checking or savings) and the bank routing number (not required for transfers to Smith Barney accounts). Your bank account must have the same or at least one FMA account owner in the title. Speak to your Financial Consultant for trust and estate ownership requirements.

| Financial Institution | | ☐ Check if Credit Union | Account Number | | Type of Account: ☐ Checking  ☐ Savings |
|---|---|---|---|---|---|
| | Select your Telephone Authorization Code. (members only) | | | $0 Access ATs: Contact your Financial Consultant to obtain Electronic Client ID or to enable an existing one | |
| OPTIONAL – complete only if you wish to schedule monthly or bimonthly recurring transfers. | ☐ Check here for recurring transfers INTO your FMA account FROM your bank account. ☐ Check here for recurring transfers FROM your FMA account INTO your bank account. | Amount of Transfer | Monthly, on the _____ day of each month (specify the 1st through 28th) or Bimonthly on: ☐ Mon ☐ Tue ☐ Wed ☐ Thu ☐ Fri | | |
| Complete this section only if your bank account title includes someone who is not a co-owner of your FMA. | I authorize Smith Barney ("SB") to initiate transfers and make adjustments for errors made in error to or from my account indicated above, in accordance with the terms of the FMA Agreement, which I have read and agree to. This authorization is to remain in full force and effect until SB has received notification here and of its termination. | | | | |
| | Account title | Signature of non-FMA owner(s) | | | Date |

Smith Barney is a division and service mark of Citigroup Global Markets Inc.



## Additional FMA Privileges

The following services are also available when you establish your FMA account. Speak with your Financial Consultant for more details.

- **Direct Deposit.** Your employer, pension plan or Social Security can send payments directly to your account. Contact the payer directly to enroll.
- **Direct Debit.** Merchants and companies can directly debit your account for monthly bill payments or mortgage payments. Contact the company directly to enroll.
- **Dividend Reinvestment.** Reinvest divide nds into additional shares automatically. Speak to your Financial Consultant to select which dividends to reinvest.
- **Quicken® or Microsoft® Money.** With a Smith Barney Financial Management Account, you may track your account transactions and activity with Quicken®, QuickBooks® or Microsoft® Money software. Fees may apply. Please ask your Financial Consultant for an application.

By signing below, I/we ("I") authorize Citigroup Global Markets Inc. ("SB") to establish checking privileges, Smith Barney Access, and the Automatic Funds Transfer service, and to have the FMA Card(s) issued as instructed (including the designated Access Levels) on the Account Application, and I affirm that I have the authority to open this account. I understand that this account as governed by the terms and conditions of this Application, the FMA Agreement, the SB Client Agreement, SB Access Terms and Conditions, my agreement with the FMA Card Issuer, the Bank Deposit Program Disclosure Document, and/or other agreements I may have with SB or other providers of services related to the FMA account. I have read all those documents and agree to their terms.

**All account owners must sign.**

*If FMA Checking is requested, please sign as you will normally sign your checks.*

| | | |
|---|---|---|
| Account Owner's Signature ▶ | *Jn L* | Date 3-7-06 |
| Co-owner's Signature ▶ | | Date |

---

### Telephone Authorization Code

Please select a 4-digit (numbers only) Telephone Authorization Code. Your verbal AFT request cannot be processed unless you provide a Telephone Authorization Code.

### SB Access AFT

To obtain an Electronic Client ID or to enable an existing one, please contact your Financial Consultant.

Do not detach this section - it will be destroyed at Smith Barney's offices after processing.

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

5218 (10/2005) Page 3 of 3

## Financial Management Account℠ Agreement

**SMITH BARNEY**
**citigroup**

Throughout this Agreement, "you" and "your" refer to the Financial Management Account, FMA PLUS℠ or Business FMA (collectively "FMA") account holder(s) who are obligated on the FMA℠ account. "We", "us" and "our" refer to Citigroup Global Markets Inc. ("SB" or "Smith Barney").

**1. DESCRIPTION OF THE ACCOUNT.** The FMA account is an SB securities margin account that provides an optional sweep feature linking your FMA account to either a deposit account at a depository institution or an available Smith Barney money market mutual fund ("SB Money Fund") as described under the "Sweep Feature" section. Other available FMA features include checkwriting, an FMA Card with an optional associated travel and reward program, and the Automatic Funds Transfer ("AFT") service. To obtain any of the optional FMA services, you must complete the appropriate forms provided by us. To open an FMA account, you must have a margin account, with a market value of no less than $10,000, comprised of cash and/or marketable securities. In some instances, an FMA account may be a securities cash account. Provisions in this Agreement regarding margin lending and margin loan value do not apply to an FMA account that is only a securities cash account.

**2. SWEEP FEATURE.** Cash balances in the FMA account (in excess of $1.00) are automatically invested, or "swept," every business day into an account at a depository institution through the Bank Deposit Program (BDP) which is eligible for insurance coverage through the Federal Deposit Insurance Corporation ("FDIC"), or into the available SB Money Fund you have chosen (each, a "sweep account").

We may amend the list of depository institutions included in the BDP after prior notice to you and you may block any depository institution from this list at any time.

It is your responsibility to monitor the total amount of deposits that you have at each depository institution in order to determine the extent of FDIC insurance coverage available to you. SB is not responsible for any insured or uninsured portion of your deposits at any of the depository institutions.

(a) BDP. If you are eligible to participate in the BDP, you authorize us to establish deposit accounts on your behalf at depository institutions affiliated with us and to automatically sweep cash balances in your FMA account into the deposit accounts as described in the SB "Important New Account Information" booklet and the BDP Disclosure Statement, which you represent that you have read and by which you agree to be bound.

(b) SB Money Funds. As an alternative to the BDP, you may elect an available tax-exempt SB Money Fund as your sweep investment. If the amount of funds in your sweep account at a depository institution reaches the maximum amount that may be deposited through the BDP, you authorize us to sweep available cash into your chosen SB Money Fund. If you are not eligible to participate in the BDP, you may elect an available SB Money Fund. You authorize us to automatically sweep cash balances into your chosen SB Money Fund. You represent that the prospectus for the SB Money Fund you have chosen has been made available to you.

**3. FMA CARD.** You can use the FMA Card to make cash withdrawals from your FMA account at either automated teller machines ("ATMs") of participating ATM networks or financial institutions, to purchase goods and services ("Purchases") at any retail establishment which accepts the FMA Card, and make deposits into or withdrawals from your FMA account at Citibank Financial Centers in the U.S. and Puerto Rico (collectively "FMA Card Transactions"). When you make a Purchase using the FMA Card, you will be directing the issuer to withdraw funds from your FMA account in the amount of the Purchase and to pay these funds to the retail establishment. You authorize us to deduct the amount of all withdrawals, the amount of all Purchases and all associated FMA fees from your FMA account. All FMA Card Transactions will be reflected on your monthly FMA statement. The FMA Card is issued only on a margin account.

You are responsible for designating an access level for each FMA Card holder on your FMA Account. An FMA Card holder may be designated with either "Full Access" or "Limited Access". An FMA Card holder designated as having Full Access will have the ability to withdraw funds directly from your FMA Account at a Citibank teller in the U.S. and Puerto Rico, in an amount up to the Total Cash Available in your FMA account. An FMA Card holder designated as having Limited Access will have the ability to withdraw funds at a teller through a cash advance on your FMA Card up to the lesser of 1) Total Cash Available in your FMA account or 2) the daily spending withdrawal limit set by Smith Barney. If no access level has is checked on the applicable form, you will be deemed to have designated such FMA Card with Full

**Access.** Access levels can be changed only upon your written request.

We will charge $1.00 for each ATM withdrawal made with an FMA Card (no charge at a Citibank or MoneyPass ATM) and $2.50 for teller withdrawals (no charge at a Citibank teller). FMA clients will receive the first 52 ATM withdrawals in a calendar year at no charge and FMA PLUS and Business FMA clients will have all Smith Barney fees waived for ATM withdrawals. We may change these fees at any time upon notice to you. There may also be local bank fees that are not within our control.

You may authorize additional FMA Card holders on your FMA account at the access level you designate. By requesting an additional FMA Card, you are authorizing FMA Card Transactions by the person to whom the additional FMA Card is issued at the access level you designate. You accept all liability with respect to the FMA Card Transactions effected by you, any additional FMA Card holders or others whom you authorize to use the FMA Card.

We reserve the right to decline any purchase or cancel your FMA Card at any time for any reason. If the FMA Card is cancelled, any pending debits will be processed and deducted immediately from your FMA account. In order to cancel the primary card or an additional card, or if the FMA Card is lost or stolen, you must immediately call the FMA Client Service Center at (800) 634-0050.

"Total Cash Available" in your FMA account refers to the sum of available cash, savings deposits linked through your BDP, money fund balances and available margin loan value, minus uncleared funds and funds reserved for approved FMA Card Transactions and will fluctuate daily. The loan value of eligible securities for the purposes of margin is subject to regulatory requirements and SB credit policies. Use of the FMA Card reduces your Total Cash Available as follows: in the case of cash withdrawals, Total Cash Available is reduced at the time of the withdrawal. In the case of Purchases, the amount of each Purchase is immediately reserved in your FMA account and may continue to accrue interest or dividends for up to 30 days. Funds are reserved and not available for additional Purchases, withdrawal or to pay checks or other debits. Payment for all purchases is debited once per month, at which time Total Cash Available is reduced by the amount of the payment.

If your Total Cash Available at any time falls below zero, SB may suspend FMA Card privileges and terminate all FMA Card issued on your FMA account. If this occurs you agree to immediately pay all amounts owed to us including Purchases which will be immediately charged to your FMA account.

**4. SMITH BARNEY TRAVEL & REWARDS PROGRAM.** The program is available to any Smith Barney account owner who holds an activated FMA Card or Smith Barney Platinum Select℠ MasterCard® Credit Card ("Credit Card") and whose account is in good standing. As used in this section, the word "you" means any Smith Barney account owner who holds an activated FMA or Credit Card and is enrolled in the Program ("Member") or other individual authorized by a Member to hold a Card or Credit Card ("Cardholder"). The annual $50 Credit Card fee includes membership in the Smith Barney Travel & Rewards Program ("Program"). For each enrolled FMA Card Account there is also a $50 annual fee for the Program. The annual fee of $50 entitles the Member to membership in the Program for a 12-month period beginning on the enrollment date. For enrolled FMA Cards, the Program fee will be automatically debited from the Member's FMA account annually. The annual fee for Smith Barney Credit Cards will be automatically billed to the Member's Credit Card billing statement annually. For Prestige and Select Client households with an eligible FMA or FMA PLUS account with an FMA Card(s), membership enrollment in the Program is automatic, and the Program fee is waived, as long as Prestige or Select status is maintained. (For more information about Prestige and Select Client status, contact your Financial Consultant.) The annual fee is not waived for a Smith Barney Credit Card account, even if it is part of a Select Client, Prestige Client or Private Wealth Management household. See Credit Card cardmember agreement for full Credit Card details. See the Terms & Conditions section of the Travel & Rewards program catalog for complete Program details.

Once enrolled, you will accumulate one point ("Point") for each U.S. dollar in "Net Purchases." Net Purchases means the dollar value of goods and services purchased with an enrolled Credit Card or FMA Card after the enrollment date, minus any credits, returns or other adjustments as reflected on your monthly account statements. Only eligible purchases qualify for points. Cash transactions, including but not limited to advances, convenience checks, balance transfers, ATM withdrawals, teller

FMA-2808 (10/2005) Page 1

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

Continued ...

dividends and interest received, checks, drafts, FMA Card Transactions, Points posted, online bill payments, AFT transactions and other activity in the account.

**12. MULTIPLE ACCOUNT OWNERS.** Any one FMA account owner may give us instructions regarding the FMA account services (including the checkwriting privilege, FMA Card Transactions or AFT transactions), and all FMA account co-owners authorize us to comply with any such instructions, except that you may indicate on the appropriate forms provided by us that two signatures are required to clear checks. If we receive inconsistent instructions from any FMA account co-owners relating to the checkwriting privilege, FMA Card Transactions, issuance of additional FMA Cards or AFT transactions (including instructions regarding cancellation of service or stopping of payment), we may, at our option, honor any one of the instructions, or decline to honor any inconsistent instructions without written directions from all FMA account co-owners and (in the case of AFT transactions) all owners of your Enrolled Account.

**13. LIABILITY.** Neither SB, nor any processing bank, nor the FMA Card issuer will be liable for any loss you incur in connection with your FMA account, FMA Card transactions, the checkwriting privilege, AFT transactions, or other FMA feature unless we are negligent in fulfilling this Agreement. In no event will we, any processing bank, nor the FMA Card issuer be liable for consequential, special or indirect damages or losses unless applicable law requires otherwise. Liability regarding online services is further limited by the Smith Barney Access Agreement. You are advised to read the Client Agreement and accompanying literature, the FMA Card and AFT Agreements and Disclosures, and the Smith Barney Access Agreement.

You shall protect your FMA Card, FMA checks, each PIN, Telephone Authorization Code, and other account access security codes ("Codes") from access by anyone not authorized to use them. You will be liable for all FMA Card, check and online transactions conducted by anyone to whom you have given access. You are responsible for reviewing your FMA account statement promptly to discover and report unauthorized activity, including use of your FMA Card and FMA checks. You must notify SB immediately if you believe or have reason to believe that there has been unauthorized activity in your FMA account or that your FMA Card or FMA checks have been lost, stolen, or may be used by an unauthorized person. We may require that you send written confirmation of the unauthorized activity (or any error), within 10 days of oral notification, to Smith Barney FMA Client Service Center, P.O. Box 44301, Jacksonville, FL 32231-4301. Unless limited by law, you will be responsible for losses that arise from your failure to a) safeguard your FMA Card, checks and Codes and b) review your monthly FMA statement for possible unauthorized activity and to

report any unauthorized activity in SB within 14 days of receipt of the statement. If your FMA Card (or any additional Card issued on your account) is cancelled, you must destroy the Card. You will be responsible for any FMA Card Transactions that are processed because of your failure to destroy the Card following cancellation.

**14. TERMINATION OF THE FMA ACCOUNT.** You may terminate your FMA account at any time upon written notice to us. We may terminate your FMA account at any time, for any reason. Any termination of your FMA account will result in the cancellation of all FMA Cards issued, the checkwriting privilege, AFT service and any direct deposit and direct payment processing. If your FMA account is terminated, you will remain responsible for the payment of charges to your account, as well as all FMA Card Transactions and fees, any checks you write and any outstanding AFT transactions. In such case whether arising before or after the termination of your FMA account. If your FMA account is terminated or the FMA Card and/or checkwriting privilege is cancelled, you must immediately cease using the cards and checks and you must promptly destroy by calling in half all unused checks and FMA Cards. You must instruct initiators of direct deposit, direct payment and FMA Card Transactions to immediately cease all activity.

**15. CHANGING THIS AGREEMENT.** We may modify this Agreement and any FMA feature at any time without notice. Such changes shall be binding on you and take effect when specified by us. Any change to the terms that may affect you adversely shall take effect upon notice of such changes to you. Any such notice shall be given by U.S. mail, addressed to your current address as reflected in our records.

**16. LAWS GOVERNING THIS AGREEMENT.** This Agreement shall be construed and enforced in accordance with the laws of the State of New York disregarding any conflict of law rule, which might result in the application of the laws of another jurisdiction. The terms and conditions of this Agreement apply to you, your heirs, executors, administrators, successors and assigns. It will benefit our successors and assigns. If any provision of this Agreement cannot be enforced, all other provisions will continue in effect.

**17. QUESTIONS ABOUT YOUR FMA ACCOUNT.** If you have questions about this Agreement, your FMA Account or any FMA feature or service, or if you suspect that your FMA Card or your FMA checks are lost or stolen, call the FMA Client Service Center at (800) 634-9855 Sunday through Friday, 7 a.m. to 2 a.m., or Saturday, 7 a.m. to 12 a.m., Eastern Time.

For questions regarding the Smith Barney Travel & Rewards Program, call the Travel & Rewards Redemption Center at (800) 507-9116, or go to smithbarney.com/rewards.

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212 373-3316

WRITER'S DIRECT FACSIMILE

212 492-0316

WRITER'S DIRECT E-MAIL ADDRESS

bkarp@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MATTHEW W. ABBOTT
MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
RICHARD S. BORISOFF
HENK BRANDS
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y. F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFRY D. MARELL
JULIA TARVER MASON
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
TOBY B. MYERSON
JOHN E. NATHAN
CATHERINE NYARADY
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER*
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN M. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
LIZA M. VELAZQUEZ
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
JORDAN E. YARETT
KAYE N. YOSHINO
ALFRED D. YOUNGWOOD
TONG YU
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

April 4, 2008

**By Hand**

Hon. Miriam G. Cedarbaum                    Hon. Colleen McMahon
United States District Judge                United States District Judge
United States Courthouse                    United States Courthouse
500 Pearl Street, Room 1330                 500 Pearl Street, Room 640
New York, New York 10007                    New York, New York 10007

Hon. Laura T. Swain
United States District Judge
United States Courthouse
500 Pearl Street, Room 755
New York, New York 10007

*Finn* v. *Smith Barney, et al.*, 08 Civ. 2975 (LTS) ("*Finn*")
*LHB Insurance Brokerage Inc.* v. *Citigroup Inc., et al.*,
08 Civ. 3095 (CM) ("*LHB Insurance*")
*Swanson* v. *Citigroup Inc., et al.*, 08 Civ. 3139 (MGC)
("*Swanson*")

Dear Judges Cedarbaum, McMahon and Swain:

This firm represents Citigroup Inc. and its subsidiaries (collectively, "Citigroup") in the above-captioned actions. Pursuant to Rule 15 of the Rules for the Division of Business Among District Judges of the Local Rules of the United States

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Miriam G. Cedarbaum
Hon. Colleen McMahon
Hon. Laura T. Swain

2

District Court for the Southern District of New York, Citigroup respectfully requests that the *LHB Insurance* and *Swanson* cases be assigned to Judge Swain as related to *Finn*, which is the first-filed case.

These cases share common factual allegations concerning Citigroup's involvement in plaintiffs' purchases of auction rate securities ("ARS"), assert common claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, and involve common parties: Citigroup Inc. and Citigroup Global Markets Inc.

Specifically:

(1)    *Finn* asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 §§ U.S.C. 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5, among other claims. (*See Finn* complaint, attached hereto as Exhibit 1, ¶¶ 1, 19-40.) Plaintiff's allegations involve the purchase of ARS from Citigroup in March and April 2006. (*See id.* ¶¶ 23-24, 33.) As with the *LHB Insurance* and *Swanson* actions, the *Finn* complaint alleges that Citigroup actively, knowingly and misleadingly marketed ARS as "money market type investments" and affirmatively misrepresented that ARS were "safe and liquid." (*See, e.g., id.* ¶¶ 16, 30, 32.) Defendants in this action include Smith Barney, Citigroup Global Markets Inc., and Citigroup Inc.[1]

(2)    *LHB Insurance* is a putative class action lawsuit, also asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5, on behalf of those who purchased and/or repurchased ARS from Citigroup from March 26, 2003 through February 13, 2008. (*See LHB Insurance* complaint, attached hereto as Exhibit 2, ¶¶ 1, 10, 75-85.) As with the *Finn* and *Swanson* actions, *LHB Insurance* alleges that Citigroup "deceptively marketed ARS as cash alternatives to money market funds for investors needing liquidity," failed to disclose that ARS were not as marketed, and "intensely market[ed] ARS to its customers as a liquid cash alternative." (*See, e.g., id.* ¶¶ 3-4, 59.) The complaint also alleges that a substantial portion of auctions failed on February 13, 2008, when Citigroup, among other broker-dealers, allegedly stopped supporting the auctions, thereby exposing the ARS market as artificial and rendering ARS illiquid. (*See id.* ¶¶ 6, 65-66.) Defendants in this action include Citigroup Inc. and Citigroup Global Markets Inc.

---

[1]    Citigroup reserves its right to seek to compel arbitration in the *Finn* action.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Miriam G. Cedarbaum
Hon. Colleen McMahon
Hon. Laura T. Swain

3

(3)    *Swanson* is a putative class action lawsuit, also asserting claims under
Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15
U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5, on
behalf of those who purchased and continue to hold ARS offered for sale
by Citigroup during virtually the same class period as *LHB Insurance* —
between March 27, 2003 and February 13, 2008, inclusive. (*See Swanson*
complaint, attached hereto as Exhibit 3, ¶¶ 1, 5, 47-60.) As with the *Finn*
and *LHB Insurance* actions, the *Swanson* complaint alleges that Citigroup
represented ARS to be "equivalent to cash or money market funds," "the
same as cash," and "highly liquid, safe investments for short-term
investing," and knowingly failed to disclose that ARS were not as
marketed. (*See, e.g., id.* ¶¶ 2-3, 33-34.) The complaint also alleges that a
substantial portion of auctions failed on February 13, 2008, when
Citigroup, among other broker-dealers, allegedly refused to continue to
support the auctions, thereby causing the ARS market to collapse and
rendering ARS illiquid. (*See id.* ¶¶ 4, 38-39.) Defendants in this action
include Citigroup Inc., Citigroup Global Markets Inc., and Smith Barney.

Based on the common factual allegations, the identity of claims asserted
and the overlap of parties, and in the interests of judicial efficiency and economy,
Citigroup respectfully requests that the later-filed cases of *LHB Insurance* and *Swanson*
be assigned to Judge Swain as related to *Finn*, for coordinated proceedings.

Respectfully submitted,

Brad S. Karp

Enclosures

cc:    Clerk of Court, Southern District of New York (By Hand)

Charles Davidow, Esq. (By FedEx)

All plaintiffs' counsel (By FedEx, see attached list)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Miriam G. Cedarbaum                                    4
Hon. Colleen McMahon
Hon. Laura T. Swain


### Plaintiffs' Counsel in Actions Against Citigroup


*Finn*:              Ravi Ivan Sharma
                     404 Park Avenue South, 14th Floor
                     New York, NY 10016


*LHB Insurance*:     Eduard Korsinsky
                     Joseph E. Levi
                     Juan E. Monteverde
                     Levi & Korsinsky, LLP
                     39 Broadway, Suite 1601
                     New York, NY 10006


*Swanson*:           Christopher A. Seeger
                     Stephen A. Weiss
                     David R. Buchanan
                     Seeger Weiss LLP
                     One William Street, 10th Floor
                     New York, NY 10004

                     Daniel C. Girard
                     Jonathan K. Levine
                     Aaron M. Sheanin
                     Girard Gibbs LLP
                     601 California Street, 14th Floor
                     San Francisco, CA 94108

                     Norman E. Siegel
                     Stueve Siegel Hanson LLP
                     460 Nichols Road, Suite 200
                     Kansas City, MO 64112

LAW OFFICES OF

# RAVI IVAN SHARMA

A PROFESSIONAL LIMITED LIABILITY COMPANY

404 PARK AVENUE SOUTH, 14TH FLOOR, NEW YORK, NEW YORK 10016

212 686 3434 x212
FAX 212 202 4598
SHARMALAW.COM
RAVI@SHARMALAW.COM

April 10, 2008

| | | |
|---|---|---|
| Hon. Laura T. Swain | Hon. Collen McMahon | Hon. Miriam G. Cederbaum |
| United States District Judge | United States District Judge | United States District Judge |
| Unites States Courthouse | Unites States Courthouse | Unites States Courthouse |
| 500 Pearl Street, Room 755 | 500 Pearl Street, Room 640 | 500 Pearl Street, Room 1330 |
| New York, NY 10007 | New York, NY 10007 | New York, NY 10007 |
| By Fax: 212 805 0426 | By Fax: 212 805 6326 | By Overnight FEDEX |

RE: *Finn v. Smith Barney*, et. al., 08-cv-2975 (LTS)
*LHB Insurance Brokerage Inc. v. Citigroup Inc.*, et. al., 08-cv-3095 (CM)
*Swanson, et. Al. v. Citigroup, Inc.*, et al., 08-cv-3139 (MGC)

Dear Judges Swain, McMahon and Cederbaum:

I write as counsel for plaintiff John Finn in response to the letters written on behalf of
defendant Citigroup Inc., requesting consolidation under the *Finn* matter and plaintiffs Lisa
Swanson and LHB Insurance Brokerage, objecting to the same while not objecting to
consolidation under their own matters, or in the case of *LHB*, requesting it.

Mr. Finn does not object to consolidation, but does not agree that his matter is so different
than the other two that Judge Swain or his matter should be disqualified from consideration of
Citigroup Inc.'s request.

Although *Finn* includes additional causes of action and an individual defendant employee of
the corporate defendants, the core claims of all three matters are virtually identical.

While Citigroup has reserved any right it may have to attempt to compel arbitration with Mr.
Finn, it has not so elected—and cannot do so at this time because Mr. Finn is a putative class
member under the *LHB* and *Swanson* complaints notwithstanding his separate similar and
additional claims. Mr. Finn has not opted out of the class regarding his claims in common
with the putative classes and need not choose one way or the other until and if a class is
certified and as a class members he is required to choose. Moreover, Citigroup, raising
economy as rationale for consolidation, may later (if Finn opts out or after a non-certification
or de-certification of the *LHB* or *Swanson* classes) determine such will also be served by
waiving any right it may then have to compel arbitration of some claims in *Finn*.

Mr. Finn has been extremely aggrieved and harmed by the defendants in an amount over $400,000.00 of his life savings. To the extent he is entitled to remain in a forum of his choosing and seek all avenues of relief, he should be. And because his core claims have been duplicated by later filed putative class actions, if judicial economy, the rules, and other considerations lean towards consolidation of such under Judge Swain, then they should be without regard to the individual nature of his action.

In any event, for the reasons set forth, *Finn* should be consolidated with all similar matters, including, but not limited to, *LHB* and *Swanson*.

Very truly yours,

Ravi Ivan Sharma (RIS2064)

cc:  Brad S. Karp, counsel for defendant Citigroup, Inc. (by fax: 212 757 3990)
     Eduard Korsinsky, counsel for plaintiff LHB Insurance (by fax: 212 363 7171)
     Christopher A. Seeger, counsel for plaintiff Swanson (by fax: 212 981 9266)
     Norman Siegel, counsel for plaintiff Swanson (by fax: 816 714 7101)

# LEVI & KORSINSKY, L.L.P.

39 BROADWAY, SUITE 1601
NEW YORK, NEW YORK 10006

TEL: (212) 363-7500
FAX: (212) 363-7171
WWW.ZLK.COM

EDUARD KORSINSKY
ek@zlk.com

April 9, 2008

*VIA FACSIMILE*
*and FIRST CLASS MAIL*

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007

The Honorable Miriam G. Cedarbaum
United States District Judge
Southern District of New York
500 Pearl Street, Room 1330
New York, NY 10007
(only via First Class Mail)

The Honorable Laura T. Swain
United States District Judge
Southern District of New York
500 Pearl Street, Room 755
New York, NY 10007

Re:    *Finn v. Smith Barney, et al.*, 08-cv-2975 (LTS)
       *LHB Insurance Brokerage, Inc. v. Citigroup, Inc. et al*, 08-cv-3095
       *Swanson v. Citigroup, Inc., et al.*, 08-cv-3139

Dear Judges McMahon, Cedarbaum and Swain:

We represent plaintiff LHB Insurance Brokerage Inc. in the first-filed class action complaint currently pending before Judge McMahon. We are responding to the letter dated April 4, 2008 submitted by Citigroup Inc. and its subsidiaries (collectively "Citigroup") requesting that the *LHB Insurance* and *Swanson* actions be related to the *Finn* action currently pending before Judge Swain pursuant to Rule 15 of the Rules for the Division of Business Among District Judges. For the reasons stated below, we respectfully request that the *LHB Insurance* and *Swanson* class actions be permitted to proceed before Judge McMahon independent of the *Finn* action.

The *Finn* action is an individual action filed by Mr. John Finn asserting claims against Citigroup in connection with his investment in Auction Rate Securities ("ARS"). For example, Mr. Finn alleges that Citigroup mismanaged the investment of $675,116.25 representing the proceeds of the sale of his home in Williamsburg, NY. *See Finn* Complaint, attached to Citigroup's letter, ¶ 23. Mr. Finn alleges that he was "unsophisticated in...matters relating to investments in the stock markets" and relied on Citigroup to recommend "super safe" investments suitable for his retirement goals. *See Id.* ¶¶ 20, 23. Mr. Finn goes on to allege that his broker at Citigroup failed to explain "how to properly read and interpret statements" sent to

April 9, 2008

Page 2 of 2

him by Citigroup, purchased securities for Mr. Finn's account that were unsuitable for his investment objectives and made purchases that were "excessive in size given the risk." *See Id.* ¶¶ 30-31. Mr. Finn further alleges that his broker told him he was purchasing municipal bonds when in fact the broker purchased ARS instead. *See Id.* ¶¶ 23, 24. Mr. Finn's complaint asserts distinctly individual claims against his broker relating to investment suitability. In contrast, the *LHB Insurance* and *Swanson* actions are both class action lawsuits alleging that Citibank engaged in a broad-based deceptive marketing campaign with respect to ARS. Accordingly, coordinating the *LHB Insurance* and *Swanson* class actions with the Mr. Finn's individual case will not promote judicial economy.

Furthermore, the class actions should not be related to the *Finn* action because Mr. Finn's action appears to be subject to arbitration and therefore is unlikely to remain in this Court[1]. Indeed, in footnote 1 of its letter, Citigroup reserves its rights to compel arbitration of the *Finn* action. Given that virtually all brokerage agreements compel customers to redress their claims in arbitration, we do not see how the *Finn* action could survive a motion to compel arbitration. Moreover, even if the *Finn* action were to survive such a motion, it would likely proceed on a separate litigation track to deal with the individual issues raised by Mr. Finn that have no relevance to the *LHB Insurance* and *Swanson* actions.

For these reasons, we respectfully request that the *LHB Insurance* and *Swanson* cases be related and these actions be assigned to Judge McMahon for coordinated proceedings.

Sincerely,

Levi & Korsinsky, LLP

By: _Eduard Korsinsky_
    Eduard Korsinsky

cc:   Clerk of Court, Southern District of New York (via hand delivery)
      Brad S. Karp, Counsel for Defendant Citigroup, Inc. (via facsimile 212-757-3900)
      Ravi Ivan Sharma, Counsel for Plaintiff Finn (via facsimile 212-202-4598)
      Christopher A. Seeger, Counsel for Plaintiff Swanson (via facsimile 212-981-9266)
      Norman E. Siegel, Counsel for Plaintiff Swanson (via facsimile 816-714-7101)

---

[1] Financial Industry Regulatory Authority, Inc.'s Uniform Code of Arbitration, §10301(d), states that a claim submitted as a class action shall not be eligible for arbitration. Therefore the *LHB Insurance* and *Swanson* cases are not subject to arbitration and were properly filed in this Court.

# GIRARD GIBBS LLP

Attorneys at Law

601 California Street, 14th Floor | San Francisco, CA 94108-2805
Tel: 415.981.4800 | Fax: 415.981.4846 | www.girardgibbs.com

April 9, 2008

**VIA HAND DELIVERY**

Hon. Laura T. Swain
United States District Judge
United States Courthouse
500 Pearl Street, Room 755
New York, NY 10007

**VIA HAND DELIVERY**

Hon. Colleen McMahon
United States District Judge
United States Courthouse
500 Pearl Street, Room 1330
New York, NY 10007

**VIA HAND DELIVERY**

Hon. Miriam G. Cederbaum
United States District Judge
United States Courthouse
500 Pearl Street, Room 1330
New York, NY 10007

Re:  *Finn v. Smith Barney, et al.*
     *08-CV-2975 (LTS) )("Finn")*

     *LHB Insurance Borkerage Inc. v. Citigroup Inc., et al.*
     *08-CV-3095 (CM) ("LHB Insurance")*

     *Swanson, et al. v. Citigroup, Inc., et al.*
     *08-CV-3139 (MGC) ("Swanson")*

Dear Judges Swain, McMahon and Cederbaum:

We write as counsel for Plaintiff Lisa Swanson in response to the request of Defendant Citigroup
Inc. and its subsidiaries (collectively, "Citigroup") to reassign two class actions, *LHB Insurance
Brokerage Inc. v. Citigroup, Inc., et al.*, 08 Civ. 3095 (CM), and *Swanson v. Citigroup Inc., et al.*, 08 Civ.
3139 (MGC), to the Honorable Laura T. Swain on the grounds that those cases are related to an earlier-
filed individual action, *Finn v. Smith Barney, et al.*, 08 Civ. 2975 (LTS), now pending before her. All
three cases arise out of Citigroup's alleged violations of the Securities and Exchange Act of 1934 (the
"Exchange Act") in connection with the sale of auction rate securities. Plaintiff Swanson respectfully
submits, however, that the interests of justice and efficiency will be not served be relating the *LHB
Insurance* and *Swanson* actions to the *Finn* action.

To:   Hon. Laura T. Swain
       Hon. Colleen McMahon
       Hon. Miriam G. Cedarbaum

Re:   *Finn v. Smith Barney, et al.*, 08-CV-2975 (LTS)
       *LHB Insurance Borkerage Inc. v. Citigroup Inc., et al.*, 08-CV-3095 (CM)
       *Swanson, et al. v. Citigroup, Inc., et al.*, 08-CV-3139 (MGC)

April 9, 2008
Page 2.

      Rule 15 of the Rules for the Division of Business Among District Judges of the Local Rules of the United States District Court for the Southern District of New York provides that, "a civil case will be deemed related to one or more other civil cases and will be transferred for consolidation or coordinated pretrial proceedings when the interests of justice and efficiency will be served." To determine relatedness, the Court must consider whether: "(i) a substantial saving of judicial resources would result; or (ii) the just efficient and economical conduct of the litigations would be advanced; or (iii) the convenience of the parties or witnesses would be served." The Rule further provides that "a congruence of parties or witnesses or the likelihood of a consolidated or joint trial or joint pre-trial discovery may be deemed relevant." As *Finn* is subject to mandatory arbitration, while *Swanson* and *LHB Insurance* are not, coordinating the three cases would not serve the stated goals of Rule 15.

      Citigroup's standard agreement with its brokerage clients, including plaintiffs in these three cases, contains a pre-dispute arbitration clause which provides that "all claims or controversies" between an individual client and Citigroup concerning an account or securities transaction shall be determined by arbitration. (*See* Attachment A, ¶ 6.) The agreement also provides that the parties will forebear from enforcing any pre-dispute arbitration rights "against any person who has initiated in court a putative class action; or who is a member of a putative class. . . ." (*Id.*) Thus, the *Finn* action is subject to a motion to compel arbitration, while the *LHB Insurance* and *Swanson* class actions are not.

      Notably, Citigroup has reserved its right to compel arbitration in the *Finn* action. (*See* Letter of Brad S. Karp dated April 4, 2008, at 2 n.1.) The Supreme Court held that Exchange Act claims such as those at issue in the *Finn* action may be compelled to arbitration. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987). *See also Chang v. Lin*, 824 F.2d 219, 221 (2d Cir. 1987). As a result, the benefit of coordination here is minimal. Litigation in the *Finn* action will be directed at a single issue, arbitration. Based on the case law, that action is unlikely to proceed in federal court, whereas the class actions will be the subject of litigation on the merits. While *Finn* arises from similar facts and circumstances as *LHB Insurance* and *Swanson*, there is no significant benefit to be obtained by coordination and reassignment.[1]

---

[1]    *LHB Insurance* and *Swanson* are subject to the Private Securities Litigation Reform Act of 1995, which mandates consolidation of related class actions prior to the appointment of a lead plaintiff. *See* 15 U.S.C. § 78u-4(3)(B)(ii). Thus, these and any other class actions concerning similar subject matter that may be filed against Citigroup are likely to be consolidated at an appropriate time. In addition, similar class actions challenging the practices concerning the sale of auction rate securities by broker-dealers other than Citigroup have recently been filed in this and other judicial districts. Whether such class actions are related or should be coordinated with each other for pre-trial purposes has yet to be determined, and Plaintiff Swanson reserves all rights concerning such determination.

To:   Hon. Laura T. Swain
      Hon. Colleen McMahon
      Hon. Miriam G. Cedarbaum

Re:   *Finn v. Smith Barney, et al., 08-CV-2975 (LTS)*
      *LHB Insurance Borkerage Inc. v. Citigroup Inc., et al., 08-CV-3095 (CM)*
      *Swanson, et al. v. Citigroup, Inc., et al., 08-CV-3139 (MGC)*

April 9, 2008
Page 3.


       For the foregoing reasons, Plaintiff Swanson respectfully requests that Citigroup's request to reassign the *LHB Insurance* and *Swanson* class actions with the *Finn* individual action be denied.


                    Very truly yours,

                    **GIRARD GIBBS LLP**

                    Jonathan K. Levine

Attachment

Cc:   Clerk of Court, Southern District of New York *(via hand delivery)*
      Brad S. Karp, Counsel for Defendant Citigroup, Inc. *(via facsimile: 212.757.3990)*
      Ravi Sharma, Counsel for Plaintiff Finn *(via facsimile: 212.202.4598)*
      Eduard Korsinsky, Counsel for Plaintiff LHB Insurance *(via facsimile: 212.363.7171)*
      Christopher A. Seeger, Counsel for Plaintiff Swanson *(via facsimile: 212.981.9266)*
      Norman Siegel, Counsel for Plaintiff Swanson *(via facsimile: 816.714.7101)*

# Account Application, Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number

**citi smith barney**

| Account Number | | | | |
|---|---|---|---|---|
| Branch | Account | I | C | FA |

## Personal Information

| **Account Owner** | **Account Owner** |
|---|---|
| Name | Name |
| | |
| SS# or Tax ID          Date of Birth | SS# or Tax ID          Date of Birth |
| Country of Citizenship h | Country of Citizenship h |
| Citizenship: ☐ U.S. ☐ U.S. Permanent Resident Alien | Citizenship: ☐ U.S. ☐ U.S. Permanent Resident Alien |
| Daytime Phone          Evening Phone | Daytime Phone          Evening Phone |
| Fax | Fax |
| Email | Email |
| Account Owner's Mother's Maiden Name: | Account Owner's Mother's Maiden Name: |
| Security Question: Account Owner's City of Birth: | Security Question: Account Owner's City of Birth: |
| **Mailing Address for this account** | **Permanent Legal Address for this account** (*if different than Mailing Address*) |
| Street Address | Street Address |
| City          State     ZIP | City          State     ZIP |
| This account is for (check appropriate box): ☐ Individual/Joint ☐ Sole Proprietor | ☐ Corporation ☐ Partnership ☐ Other (Specify): _____ |

## Additional Account Owner(s)

| Name | Name |
|---|---|
| SS# or Tax ID          Date of Birth | SS# or Tax ID          Date of Birth |
| Country of Citizenship h | Country of Citizenship h |
| Citizenship: ☐ U.S. ☐ U.S. Permanent Resident Alien | Citizenship: ☐ U.S. ☐ U.S. Permanent Resident Alien |

**U.S. Federal law requires us to obtain, verify and record information that identifies each person or entity that opens an account. What this means for you is that when you open an account, we will ask for your name, a street address, date of birth, and an identification number, such as a Social Security No. or other identification number, that Federal law requires us to obtain. We may also ask to see a driver's license, corporate formation document (for corporate entities), or other identifying documents that will allow us to identify you or the corporate entity seeking to open an account. We appreciate your cooperation.**

3026-NAS v2 (8/2007) Page 1 of 7

Smith Barney is a division and service mark of Citigroup Global Markets Inc.



* 3 0 2 6 *

| Account Number Branch | Account | | | T | C | FA |
|---|---|---|---|---|---|---|
| | | | | | | |

## Alternate Mail Instructions

Complete this section if you desire another individual to receive mail on your behalf. The individual you designate MUST qualify as a "special custodian," which is defined as someone who: is not authorized to withdraw funds or securities from your account, AND; is not authorized to place orders or move assets for you, AND is not affiliated with a broker/dealer or registered investment advisor.

Please direct all communications, including trade confirmations and monthly statements, for my account indicated above, to the special custodian designated below. This instruction will remain in effect until written notice to the contrary is received by you at the branch office servicing my account. (See Paragraph 12 Page 6)

Name

Street Address                                    City                          State        ZIP

## Smith Barney Access℠ smithbarney.com

Using Smith Barney Access, our free Internet-based service, you may view your investment portfolio, account activity, research and news headlines, pay bills online, transfer funds electronically (AFT℠), receive electronic delivery of your statements, trade confirmations and other documents, customize your homepage, send secure e-mail to your Smith Barney Financial Advisor, and download information to your computer.

To enroll in Access, go to www.smithbarney.com. The account owner's mother's maiden name is required for online enrollment. If you have not already provided it in the Personal Information section above, please do so. Speak to your Financial Advisor regarding our free Smith Barney Access Internet Bill Pay service.

## Sweep Preference

Sweep allows your idle cash to be invested automatically. Choose where you would like your cash to be invested. Please check one. *The FMA account has a daily sweep.*

☐ Bank Deposit Program℠ – FDIC-insured deposits in affiliated Citigroup banks
☐ Tax-free money market fund*
☐ Taxable money market fund**

\* subject to eligibility rules for Bank Deposit Program (BDP) eligible clients (please consult with your Financial Advisor (FA))
\*\* taxable funds are available for clients who are not eligible for the Bank Deposit Program (BDP)

## Borrowing Privileges

Portfolio CreditLine® (margin) allows you to borrow against the value of eligible securities in your account for almost any investment, personal or business purpose. Eligible accounts will have Portfolio CreditLine borrowing privileges unless you decline below. See accompanying literature for an explanation of Portfolio CreditLine borrowing.

☐ I/We do *not* want Portfolio CreditLine borrowing privileges in my/our account.

## Dividend Reinvestment

☐ Reinvest dividends into additional shares automatically (fees may apply). Speak to your Financial Advisor to select which dividends to reinvest.

## FMA® Account

☐ Please establish my account as Financial Management Account℠ (FMA®)
*Note: Business Accounts will be automatically established as a Business FMA.*

## Check Writing

Check writing privileges provide you with convenient access to your money. Choose your check imprint and style preference.

Check Imprint:
☐ Name and Address
☐ Name only; no address

Check Style Preference:
☐ Wallet Size
☐ Wallet Size with Duplicate (Additional Charge)

☐ Executive (additional charge)
☐ Corporate (additional charge)

Multiple owner accounts—please tell us if one or two signatures are required to authorize checks:
☐ One signature required    ☐ Two signatures required

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

| Account Number Branch | Account | | T | C | TA |
|---|---|---|---|---|---|
| | | | | | |

**FMA Card ~** The FMA Card is a Gold MasterCard® that gives you easy access to the available funds in your FMA account at ATM machines worldwide and allows you purchasing power wherever MasterCard is accepted. You can also use the FMA Card to deposit into and withdraw from your FMA account at Citibank Financial Centers in the U.S. and Puerto Rico. No annual card fee applies. ATM fees waived at Citibank and MoneyPass locations. Some account types may not be eligible for the FMA Card.

| How should the account owner's name appear? | *(maximum number of characters is 24)* | SS# | Mother's Maiden Name | Access Level* ☐ Full ☐ Limited |
|---|---|---|---|---|
| How should the account owner's name appear? | *(maximum number of characters is 24)* | SS# | Mother's Maiden Name | Access Level* ☐ Full ☐ Limited |

*A card holder designated as having Full Access will have the ability to withdraw funds directly from the related FMA account at a Citibank Teller in the U.S. and Puerto Rico, in an amount up to the total funds available in such FMA account. Total funds available include cash, savings deposits linked through your BDP, money fund balances and available margin loan value, minus uncleared funds and pending FMA Card transactions.*

*A card holder designated as having Limited Access will have the ability to withdraw funds at a teller through a cash advance on the related FMA Card up to the lesser of 1) total cash available in the related FMA account or 2) the daily spending withdrawal limit set by Smith Barney.*

*If you do not select an Access Level, the card holder will be designated Full Access.*

**ThankYou™ Network Rewards Program** ☐ Yes. Enroll my FMA Card(s) in ThankYou™ Network so that I can earn and redeem points for exciting rewards in this no-annual membership fee rewards program.

**Automatic Funds Transfer™** — Transfer money by phone or online between your FMA and another U.S. financial institution, or to another Smith Barney account that has been linked to your FMA account for statement reporting purposes.

Attach a voided check or a letter from your financial institution confirming the account number, title, account type (checking or savings) and the routing number (not required for transfers to Smith Barney accounts). Your account must have the name of at least one FMA account owner in the title; otherwise the establishment of the Automatic Funds Transfer will be subject to further review and approval. Speak to your Financial Advisor for trust and estate ownership requirements.

I/we hereby indemnify and hold Smith Barney harmless from and against any and all claims, actions, demands, suits, damages, losses, expenses, fines and judgments including but not limited to reasonable attorney's fees, costs and disbursements, arising out of or in any way related to its acting in accordance with instructions relating to Automatic Funds Transfers. This indemnity is unlimited and shall be binding upon my heirs, successors and assigns.

| Financial Institution | Account Number |
|---|---|
| | |

| Type of Account ☐ Checking ☐ Savings | Select your 4-Digit Telephone Authorization Code (numbers only) |
|---|---|
| | |

*Automatic Funds Transfers can be made online through our free Internet service, Smith Barney Access. Contact your Financial Advisor to enable this service.*

**Optional — Complete only if you wish to establish monthly or biweekly recurring transfers.**

I would like to establish a recurring transfer in the amount of ($100 minimum): $ _____     ☐ INTO my FMA account   ☐ FROM my FMA account

Frequency:   ☐ Monthly, on the _____ day of each month (specify the 1st through 28th) OR ☐ Biweekly on ☐ Mon  ☐ Tue  ☐ Wed  ☐ Thu  ☐ Fri

| **Complete this section only if your account title at another U.S. financial institution includes someone who is not a co-owner of your FMA account.** | I authorize Smith Barney ("SB") to initiate transfers and make adjustments for entries made in error (a or from my account indicated above, in accordance with the terms of the FMA Agreement, which I have read and agree to. This authorization is to remain in full force and effect until SB has received notification from me of its termination. |
|---|---|
| | Account Title |
| | Signature of non-FMA owner(s)                     Date |

## Name Disclosure

The issuers of securities we hold for you in street name may request your name, address and securities position. This information will not be released if you check this box: ☐

Bank issued certificates of deposit purchased through Smith Barney and the Smith Barney Bank Deposit Program are insured by the FDIC (see disclosure documents for details). All other investment or insurance products sold through Smith Barney:
- are not insured by the FDIC;
- are not a deposit or other obligation of a depository institution and are not guaranteed by a depository institution;
- are subject to investment risks, including the possible loss of the principal amount invested.

In consideration of Citigroup Global Markets Inc. ("you") accepting an account for me/us, I/we ("I") acknowledge that I have read, understand and agree to the terms of the attached Client Agreement in sections 1 through 12. If this is a multiple party account, I further acknowledge that I have read, understand and agree to the terms of the attached Client Agreement contained in sections 13 through 15. If I have requested Smith Barney Access, I have read, understand, and agree to the terms of the Smith Barney

3026-NAS v2 (8/2007) Page 3 of 7                                    Smith Barney is a division and service mark of Citigroup Global Markets Inc.

| Account Number | | | | | |
|---|---|---|---|---|---|
| Branch | Account | | T | C | FA |

**Access Agreement.** If I have requested any of the services referenced in the FMA sections above, I agree to the terms of the FMA Agreement that has been provided to me and understand that both an account minimum balance and annual fee apply. I authorize you to establish checking privileges, Online Services and the Automatic Funds Transfer service, and to have the FMA Card(s) issued as instructed (including the designated Access Levels) on this Account Application, and I affirm that I have the authority to open this account. I authorize you and the FMA Card Issuer to have FMA Card(s) issued as indicated (including the designated Access Levels). I understand that this account is governed by the FMA Agreement, the Client Agreement, the Online Services Agreement, my agreement with the FMA Card Issuer, the Bank Deposit Program Disclosure Document, and/or other agreements I may have with you or other providers of services related to the FMA account. I have read all those documents and agree to their terms.
If this account is established with Portfolio CreditLine (margin) privileges, I further acknowledge that I have read, understand and agree to the terms of the attached Client Agreement contained in sections 16 through 18 and that my/our securities may be loaned to you or loaned out to others.

**Tax Certification: Under penalties of perjury I certify that:**
1.) the number I have provided above is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and
2.) I am not subject to backup withholding because: a.) I am exempt from backup withholding, or b.) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or c.) the IRS has notified me that I am no longer subject to backup withholding.
3.) I am a U.S. person (including a U.S. resident alien)
**Certification Instructions:** You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

*Smith Barney requires your consent to the applicable provisions of this Agreement in order to open and maintain your account.*
*All account owners must sign. If FMA Checking is requested, please sign as you will normally sign your checks.*

I acknowledge that I have received a copy of the Client Agreement which contains    *The Internal Revenue Service does not require your consent to any provision of this*
a pre-dispute arbitration clause on page 6 of 7, section 8.    *document other than the certifications required to avoid backup withholding.*

| | Date |
|---|---|
| Account Owner Signature | |
| Account Owner Signature | |
| Additional Account Owner Signature | |
| Additional Account Owner Signature | |

3026-NAS v2 (8/2007) Page 4 of 7                    Smith Barney is a division and service mark of Citigroup Global Markets Inc.

## CLIENT AGREEMENT

In consideration of your opening one or more accounts for me ("we", "us" and "our" are each substituted for "I", "me" and "my", respectively, in the case of multiple account holders, corporations and other entities), and your agreeing to act as broker/ dealer for me for the extension of credit and in the purchase or sale of securities, commodities, options and other property, it is agreed in respect to any and all accounts, whether upon margin or otherwise, which I now have or may at any future time have with Citigroup Global Markets Inc. or its direct or indirect subsidiaries and affiliates or their successors or assigns (hereinafter referred to as "you", "your", "SB" or "Smith Barney", that:

1. All transactions entered into under this Agreement shall be subject to any applicable constitution, rules, regulations, customs and usages of the exchange or market and its clearinghouse, if any, where such transactions are executed by SB or its agents and to all applicable laws, rules and regulations of governmental authorities and self-regulatory agencies. Such reference to the "constitution, rules, regulations, customs and usages of the exchange" shall in no way be construed to create a cause of action arising from any violation of such constitution, rules, regulations, customs and usages. If any provision is enacted that would be inconsistent with any of the provisions of this Agreement, the provision so affected shall be deemed modified or superseded by the enactment, but the remaining provisions of this Agreement shall remain in effect. Except as herein provided, no provision of this Agreement may be waived, altered, modified or amended unless the same is in writing and signed by an authorized official of SB.

2. I agree that all property which I own, or in which I have an ownership interest, whether owned individually, jointly or in the name of another person or entity, which at any time may be in your possession or control for any purpose, including safekeeping, shall be subject to a continuing security interest, lien and right of set-off for the discharge and satisfaction of any debts or obligations however arising that I may owe to SB at any time and for any reason. SB may at its discretion hold such property until my debts or obligations to SB are fully satisfied or SB may apply such property and the proceeds of the liquidation of such property toward the satisfaction of my debts and obligations and I will remain liable to SB for any deficiency. In enforcing your security interest, you shall have the discretion to determine which property is to be sold and the order in which it is to be sold and shall have all the rights and remedies available to a secured party under the New York Uniform Commercial Code. Without your prior written consent, I will not cause or allow any of the collateral held in my account(s), whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than your security interest.

Without limiting the generality of the foregoing, I hereby authorize SB to automatically liquidate any money market fund shares or withdraw any savings deposit balances available in my account(s) from time to time to cover any of my indebtedness or obligations to SB including non-trade related debts. You are further authorized to liquidate any other property held in my account(s) to satisfy any such indebtedness or obligations whenever in your discretion you consider it necessary for your protection. You are hereby authorized without further direction from me to automatically deposit or "sweep" all the free credit balances in my account into one or more FDIC insured depository institutions ("Program Banks") affiliated with you as more particularly set forth in the disclosure document which I represent that I have read and by which I agree to be bound. I understand that you may amend the list of Program Banks and that I may eliminate any Program Bank from the list at any time. If my free credit balances that are swept into the Program Banks reach the maximum amount that I have authorized you on my behalf to deposit or that may be so deposited under the Bank Deposit Program ("Program"), you are authorized to sweep, without further direction from me, my excess eligible free credit balances into the SB Money Fund portfolio that I have chosen.

I acknowledge (i) that I am responsible to monitor the total amount of deposits I have at each Program Bank in order to determine the extent of Federal Deposit Insurance

Corporation insurance coverage available to me, and (ii) that SB is not responsible for any insured or uninsured portion of my deposits at any of the Program Banks.

I understand that I may instruct you not to sweep the free credit balances in any of my accounts into a Program Bank account but instead to sweep such free credit balances into a tax exempt money market fund. If I so instruct you, you are authorized, without further direction from me, to invest any eligible free credit balances in any of my accounts in the tax exempt money market fund you make available and that I have chosen.

"Property" as used anywhere in this Agreement shall include, but not be limited to, investment property, securities and commodities accounts, securities of all kinds, money, savings deposits, certificates of deposit, bankers' acceptances, commercial paper, options, commodities, and contracts for the future delivery of commodities or relating to commodities or securities, and the distributions, proceeds, products and accessions of any of the above. All property held in a securities account shall be treated as a financial asset under Article 8 of the New York Uniform Commercial Code.

3. If I instruct you to sell an equity security that you designate as a "long" sale, and you are unable to deliver the security to the purchaser as a result of my failure to provide the security to you, I acknowledge that you are required by law to purchase (i.e., "buy-in") a security of like kind and quantity from a third party in order to deliver the security to the purchaser. I understand that in these circumstances, you will not borrow the security to make delivery to the purchaser unless: (i) in advance of such sale, you know, or I informed you, that I owned the security and would deliver it to you prior to the scheduled settlement for the sale, and I failed to make such delivery, or (ii) a securities exchange or securities association permits you to borrow the security. I agree to be responsible for any loss which you may sustain through a buy-in or borrowing and any premiums, interest or other costs which you may be required to pay as a result of such buy-in or borrowing, or the inability to make a buy-in or borrowing.

4. Communications may be sent to the mailing address on file with you, or at such other address as I may hereafter give in writing, and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to me personally, whether actually received or not. I acknowledge that the rules of the Securities and Exchange Commission require that certain communications be sent to me rather than an agent acting on my behalf. I warrant that the address currently on file with you is an address where I personally receive communications unless it is the address of a qualified custodian as defined by the Securities and Exchange Commission. Transactions entered into for my account(s) shall be confirmed in writing to me where required by applicable law or regulation. In addition, SB shall provide me with periodic statements reflecting activity in such account(s). I agree that transactions reflected on such confirmations and statements shall be conclusively deemed accurate as stated unless I notify SB in writing within three (3) days and ten (10) days of receipt, respectively, that the information contained in such confirmation or statement is inaccurate. Such notice must be sent by me to SB by telegram or letter directed to the attention of the Branch Office Manager of the office servicing the account. Failure to so notify SB shall also preclude me from asserting at any later date that such transaction was unauthorized.

I authorize you at your discretion to obtain reports and to provide information to others concerning my credit standing and my business conduct. You may ask credit reporting agencies for consumer reports of my credit history. Upon my request you will inform me whether you have obtained any such consumer reports and if you have, you will inform me of the name and address of the consumer reporting agency that furnished the reports to you.

5. I hereby represent that I am of the age of majority. Unless I advise you to the contrary, in writing, and provide you with a letter of approval from my employer, where required, I represent that I am not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any

## KEEP THIS FOR YOUR RECORDS

exchange, or of a member firm or member corporation registered on any exchange, or of any corporation, firm or individual engaged in the business of dealing, either as a broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper. I further represent that no one except those signing this agreement has an interest in my account.

If my account has been introduced to you and is carried by you only as a clearing broker, I agree that you are not responsible for the conduct of the introducing broker and your only responsibilities to me relate to the execution, clearing and bookkeeping of transactions in my accounts.

**6. Arbitration**

This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

- All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

- The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member. I may elect which of these arbitration forums shall hear the matter by sending a registered letter or telegram addressed to Smith Barney at 77 Water Street, New York, N.Y. 10005, Attn: Law Department. If I fail to make such election before the expiration of five (5) days after receipt of a written request from SB to make such election, SB shall have the right to choose the forum.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the person is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**7.** The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or resume with SB, and shall inure to the benefit of SB's present organization, and any successor organization or assigns; and shall be binding upon my heirs, executors, administrators, assigns or successors in interest. Should any term or provision of this Agreement be deemed or held to be invalid or unenforceable, the remaining terms and provisions shall continue in full force and effect. Except for statutes of limitation applicable to claims, this Agreement

and all the terms herein shall be governed and construed in accordance with the laws of the State of New York without giving effect to principles of conflict of laws. The statute of limitations applicable to any claim shall be that which would be applied by the courts of the state in which I reside or if I do not reside in the United States, the statute of limitations shall be that which would be applied by the courts in the state where the SB office servicing my account(s)is located.

**8.** I understand that you may in your sole discretion prohibit or restrict trading of securities or substitution of securities in any of my accounts. You have the right to terminate any of my accounts (including multiple owner accounts) at any time by notice to me. The provisions of this agreement shall survive the termination of any account.

**9.** Your failure to insist at any time upon strict compliance with any term of this Agreement, or any delay or failure on your part to exercise any power or right given to you in this Agreement, or a continued course of such conduct on your part shall: at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to you in this Agreement are cumulative and not exclusive of any other rights or remedies which you otherwise have.

**10.** I understand that SB shall not be liable for loss caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading, war, terrorist acts, strikes or other conditions, commonly known as "acts of God," beyond SB's control.

**11.** From time to time you may at your discretion, make loans to me for a purpose other than purchasing, carrying or trading in securities ("Express Credit Loans"). Express Credit Loans will be made in a good-faith account established pursuant to Federal Reserve Board Regulation T ("Express Credit Account"). The minimum and maximum amount of any particular loan may be established by you in your discretion regardless of the amount of collateral delivered to you and you may change such minimum and maximum amounts from time to time.

I agree not to use the proceeds of any Express Credit Loan to purchase, carry or trade in securities. I also agree not to use Express Credit Loan proceeds directly or indirectly to repay other debt that I incur for the purpose of purchasing, carrying or trading in securities.

**12.** If I have designated another individual to receive my communications from you pursuant to the Alternate Mail Instruction on Page 1, I agree that the instruction is applicable to all communications including but not limited to proxies, prospectuses, confirmations and statements of account. In consideration of your accepting and acting upon that instruction, I agree that all such communications shall be deemed for all purposes to have been personally received by me on the date indicated in such communication. I further agree to indemnify and hold harmless you, your officers, directors and employees from any and all liabilities arising from your compliance with these instructions and I hereby specifically waive any claims arising from my election to not promptly review transactions posted to my account.

**Additional Terms for Multiple Party Accounts**

Paragraphs 13 through 15 apply only to multiple party accounts.

**13.** If this is a multiple party account, in consideration of you and your successors carrying a multiple party account on margin or otherwise for the undersigned, each of us agrees to be jointly and severally liable for said account and to pay on demand any debit balance or losses at any time due in this account. Any of us has full power and authority to make purchases and sales, including short sales, to withdraw monies and securities from, or to do anything else with reference to our account, either individually or in our joint names, and you and your successors are authorized and directed to act upon instructions received from any of us and to accept payment and securities from any of us for the credit of this account. Notwithstanding the ability of each of us to control the account individually, we understand and agree that you may, at your sole option, require written instructions signed by all account owners when payments or transfers are requested. Any and all notices, communications,

**KEEP THIS FOR YOUR RECORDS**

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

or any demands for margin sent to any of us shall be binding upon all, and may be given by mail or other means of communication. We hereby declare this account to be a joint tenancy with rights of survivorship unless we instruct you to establish another form of multiple ownership by executing a tenancy in common agreement, community property agreement, partnership agreement or other applicable agreement evidencing the desired form of ownership.

14. Each of us agrees to hold SB harmless from and indemnify SB against any losses, causes of action, damages and expenses arising from or as the result of SB following the instructions of either or any of us. SB, in its sole discretion, may at any time suspend all activity in the multiple party account pending instructions from a court of competent jurisdiction or require that instructions pertaining to the multiple party account or the property therein be in writing signed by both or all of us. SB shall be entitled to recover from the account or from any of us prior to distribution of the funds or property therein such costs as it may incur, including reasonable attorney's fees, as the result of any dispute between or among us relating to or arising from the account.

15. Each of us agrees that, in the event of the death of either or any of us, the survivor or survivors shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such actions, require such papers, inheritance or estate tax waivers, retain such portion of the account and restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. The estate of either or any of us who shall have died shall be liable and each survivor shall continue liable, jointly and severally, to you for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by you of the written notice of the death of the decedent, or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

If this account contains rights of survivorship, in the event of the death of either or any of us, all assets in the account shall pass to and be vested in the survivor or survivors on the same terms and conditions as previously held, without in any manner releasing the decedent's estate from the liabilities provided for herein. The estate of the decedent(s) and the survivors hereby jointly and severally agree to fully indemnify and hold harmless SB from all liability for any taxes which may be owed in connection therewith or any claims by third parties.

**Margin Agreement**

**Paragraphs 16 through 18 apply only to Margin Accounts**

16. You are hereby authorized, without notice to me, and without regard as to whether or not you have in your possession or under your control at the time thereof other property of the same kind and amount, to pledge, repledge, hypothecate or rehypothecate my property or any part thereof, either separately or together with other property of other clients, either for the amount due you from me or for a greater sum.

17. Unless I select an interest rate that is fixed for a specific period of time (a "Fixed Rate Loan"), I agree to pay ON DEMAND any balance owing with respect to any of my accounts, including interest and commissions and any costs of collection (including attorneys' fees, if incurred by you). I understand that you may demand full payment of the balance due in my account plus any interest charges accrued thereon, at your sole option, at any time without cause and whether or not such demand is made for your protection. I understand that all loans made are not for any specific term or duration but are due and payable at your discretion upon a demand for payment made to me. I agree that all payments received for my account(s) including interest, dividends, premiums, principal or other payments may be applied by you to any balances due in my account(s). If I maintain both a cash and a margin account with you, you are authorized in your discretion to utilize the equity in either type of account in satisfaction of any maintenance margin requirement without the actual transference of funds or securities between such accounts.

If I select a Fixed Rate Loan, the fixed interest rate will be based on the one-, three-, six -or twelve-month London Interbank Offered Rate ("LIBOR") selected by me (or other maturity that SB may offer from time to time) plus a mutually agreeable incremental amount added to this rate. The term of the Fixed Rate Loan will correspond to the LIBOR rate selected by me, and the LIBOR rate will remain in effect for such term despite the on-going variable nature of LIBOR. I understand that at the end of such term, I may pay my Fixed Rate Loan in full or renew it for the same or a different LIBOR term based upon the LIBOR rates then in effect on the first business day of the renewal term. I understand that if I do not specifically select either option, I will obtain a loan payable on demand and based upon the Prime Rate, as described in the SB literature that has been provided to me. I also understand that if I re-pay any Fixed Rate Loan in whole or in part prior to the expiration of its term, I will be required to pay a "breakage fee," which will be determined by SB in the manner described in the SB literature that has been provided to me. SB reserves the right to stop making Fixed Rate Loans at any time, but if I have a Fixed Rate Loan in existence on the date SB stops making such loans, my loan will not be affected. I agree that all payments received for my account(s), including interest, dividends, premiums, principal or other payments, may be applied by you to any balances due in my account(s). If I maintain both a cash and a margin account with you, you are authorized in your discretion to utilize the equity in either type of account in satisfaction of any maintenance margin requirement without the actual transference of funds or securities between such accounts.

Whenever you deem it necessary or appropriate for your protection in connection with a DEMAND loan or a Fixed Rate Loan, you are authorized, in your sole discretion, to sell, assign, transfer and deliver all or any part of my property which may be in your possession or control in any manner you deem appropriate, make any necessary purchases to cover short sales and/or any open commodity contract positions and/or to cancel any outstanding orders in order to close out the account. Without limiting the generality of the foregoing, such sale, purchase or cancellation may be made, in your sole discretion, on the exchange or other market where such business is then usually transacted, at public auction or at private sale without advertising the same. All of the above may be done without demand for margin or notice of purchase, sale or cancellation to me. No demand for margin, or notice given to me of intent to purchase or sell property or to cancel orders in my account, shall impose on you any obligation to make such demand or provide such notice to me. Any such notice or demand is hereby expressly waived, and no specific demand or notice shall invalidate this waiver. After deducting all costs and expenses of the purchase and/or sale and deliveries, including, but not limited to, commissions and transfer and stamp taxes, you shall apply the residue of the proceeds to the payment of any and all of my liabilities to you, and I shall remain liable for any deficiency. Upon any such sale, you may purchase the whole or any part thereof free from any right of redemption. In the event of my death or incompetency, the authority given by this Paragraph shall continue effective and shall be binding upon my personal representatives and heirs.

18. I will at all times maintain such margin for my account maintained by SB, as SB may require from time to time, and any debit balances arising in such account shall be charged interest in accordance with the terms described in the SB literature previously provided to me and any subsequent modifications thereto which will be provided to me. I am aware that interest charges, if not paid, will be added to the debit balance in my account for the next interest period. I am aware and agree that you may impose, for my account(s), margin requirements more stringent than those required by law or exchange regulations. I further understand and agree that such margin requirements may be changed and modified by you from time to time without prior notice to me. I further agree that any waiver by you or failure to promptly enforce, as to my account or that of others, such margin requirements shall not in any way prevent you from subsequently enforcing said margin requirements with regard to my account.

**KEEP THIS FOR YOUR RECORDS**

Smith Barney is a division and service mark of Citigroup Global Markets Inc.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000
FACSIMILE (212) 757-3990

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212 373-3316

WRITER'S DIRECT FACSIMILE

212 492-0316

WRITER'S DIRECT E-MAIL ADDRESS

bkarp@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

MATTHEW W. ABBOTT
MARK H. ALCOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN E. BAUMGARTEN
LYNN B. BAYARD
DANIEL J. BELLER
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
RICHARD S. BORISOFF
HENK BRANDS
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JEANETTE K. CHAN
YVONNE Y. F. CHAN
DOUGLAS A. CIFU
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
JAMES M. DUBIN
LESLIE GORDON FAGEN
MARC FALCONE
PETER L. FELCHER
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
JOYCE S. HUANG
JEH CHARLES JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG

DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JULIA TARVER MASON
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
TOBY S. MYERSON
JOHN E. NATHAN
CATHERINE NYARADY
ALEX YOUNG K. OH
JOHN J. O'NEIL
KELLEY D. PARKER
ROBERT P. PARKER
MARC E. PERLMUTTER
MARK F. POMERANTZ
VALERIE E. RADWANER
CAREY R. RAMOS
CARL L. REISNER
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
STEVEN B. ROSENFELD
PETER J. ROTHENBERG
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
JUDITH R. THOYER
DANIEL J. TOAL
MARK A. UNDERBERG
LIZA M. VELAZQUEZ
MARIA T. VULLO
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
JORDAN E. YARETT
KAYE N. YOSHINO
ALFRED D. YOUNGWOOD
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

April 14, 2008

<u>By Fax</u>

Hon. Laura T. Swain
United States District Judge
United States Courthouse
500 Pearl Street, Room 755
New York, New York 10007

*Finn v. Smith Barney, et al.*, 08 Civ. 2975 (LTS) ("*Finn*")

Dear Judge Swain:

This firm represents Citigroup Inc. and its subsidiaries and related parties (collectively, "Citigroup") in the above-captioned action. We write in response to the Court's inquiry as to whether Citigroup intends to move to compel arbitration in this proceeding.

Citigroup intends to move to stay this case until the Court has determined whether the related cases of *LHB Insurance Brokerage Inc.* v. *Citigroup Inc., et al.*, 08 Civ. 3095 (CM) ("*LHB*"), and *Swanson* v. *Citigroup Inc., et al.*, 08 Civ. 3139 (MGC) ("*Swanson*"), can proceed as a class action.[1] At that time, if a class is not certified, or if a class is certified but plaintiff elects not to participate in it, Citigroup intends to move to compel arbitration in *Finn*.

---

[1] In the event the complaints survive a motion to dismiss, Citigroup intends to contest class certification, due to the overwhelming number of individual issues presented by the asserted claims.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Laura T. Swain                                                                2

Plaintiff's customer agreement provides for arbitration of disputes, but also provides as follows:

> No person shall bring a putative or certified class action to arbitration, nor to seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.

Citigroup therefore cannot move at this time to compel arbitration. However, to permit plaintiff to ignore the arbitration agreement on the grounds of a pending putative class action, while not participating in that class action and instead litigating his individual claims, would make little sense.

Courts addressing this situation have stayed individual claims pending resolution of class certification, at which time the claims either would be included in the class action or compelled to arbitration. *See, e.g., Ingstad* v. *Grant Thornton, LLP*, No. 3:05-cv-98, 2006 WL 3751204 (D.N.D. Dec. 19, 2006); *MDLX Investments, LLC* v. *Parse*, No. 2:06-CV-00121 PGC, 2006 WL 1579597 (D. Utah June 1, 2006). It is Citigroup's present intention to ask this Court to do likewise.

Accordingly, in response to the Court's inquiry, Citigroup hereby advises the Court that it intends to move to stay the *Finn* proceeding, pending the Court's class certification determination in the related cases of *LHB* and *Swanson*.

Respectfully submitted,

Brad S. Karp

cc:   Hon. Miriam G. Cedarbaum (by hand delivery)
      Hon. Colleen McMahon
      Clerk of Court, Southern District of New York (by hand delivery)
      Charles E. Davidow, Esq.
      All plaintiffs' counsel (see attached list)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Laura T. Swain                                                   3

### Plaintiffs' Counsel in Actions Against Citigroup

*Finn*:                 Ravi Ivan Sharma
                        404 Park Avenue South, 14th Floor
                        New York, NY 10016
                        Fax: (212) 202-4598


*LHB Insurance*:        Eduard Korsinsky
                        Joseph E. Levi
                        Juan E. Monteverde
                        Levi & Korsinsky, LLP
                        39 Broadway, Suite 1601
                        New York, NY 10006
                        Fax: (212) 363-7171


*Swanson*:              Christopher A. Seeger
                        Stephen A. Weiss
                        David R. Buchanan
                        Seeger Weiss LLP
                        One William Street, 10th Floor
                        New York, NY 10004
                        Fax: (212) 981-9266

                        Daniel C. Girard
                        Jonathan K. Levine
                        Aaron M. Sheanin
                        Girard Gibbs LLP
                        601 California Street, 14th Floor
                        San Francisco, CA 94108
                        Fax: (415) 981-4846

                        Norman E. Siegel
                        Stueve Siegel Hanson LLP
                        460 Nichols Road, Suite 200
                        Kansas City, MO 64112
                        Fax: (816) 714-7101

LAW OFFICES OF

# RAVI IVAN SHARMA

A PROFESSIONAL LIMITED LIABILITY COMPANY

404 PARK AVENUE SOUTH, 14TH FLOOR, NEW YORK, NEW YORK 10016

212 686 3434 x212
FAX 212 202 4598
SHARMALAW.COM
RAVI@SHARMALAW.COM

April 16, 2008

**BY FACSIMILE: 212 805 0426**

Hon. Laura T. Swain
United States District Judge
Unites States Courthouse
500 Pearl Street, Room 755
New York, NY 10007

RE:    *Finn v. Smith Barney*, 08cv2975 (LTS)

Dear Judge Swain:

I am counsel for plaintiff John Finn in the referenced action. I write in response to the letter to you dated April 14, 2008 from Citigroup regarding its stated intent to seek a stay of this matter.

Citigroup is correct that they may not seek to enforce any arbitration agreement they claim is binding upon Mr. Finn due to the pendency of a putative class action of which he is a putative member. If and when Mr. Finn were to be subject to any arbitration clause, the correct course of action would be for Citigroup to seek a stay of this matter until arbitration is complete provided Citigroup filed the same into arbitration in a timely manner as ordered by this court at such time if granted.

However, Citigroup's stated intention, citing non-binding decisions, to seek a stay based on the same claimed contractual language in advance of its ability to enforce such language, is plainly an attempt to make an end-run around the regulations. It does not matter what use Citigroup intends by the enforcement of the clause or if it may be entitled to enforce it later: it is prohibited from seeking to enforce it now.

For Citigroup to seek to combine matters under this matter under the mantra of judicial economy on one hand, but on the other hand seek to separate out Mr. Finn's matter on the same core issues because he *may* in the future opt out of the class action issues against it (and even then one must wonder what economy will be served by enforcing arbitration when the same issues will be litigated in this court) is inconsistent at best.

Very truly yours

Ravi Ivan Sharma (RIS2064)

cc: Brad S. Karp, attorney for Citigroup, by facsimile: 212 492 0296

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD R. WILSON, JR., LAURIE WILSON, DRWJ NO. CLEVELAND TRUST, KENNETH S. BRODY and KSB HENDERSON TRUST, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.  05 C 3474 |
| v. | ) ) | Judge Robert W. Gettleman |
| DEUTSCHE BANK AG, DEUTSCHE BANK SECURITIES, INC., d/b/a Deutsche Bank Alex. Brown, a division of Deutsche Bank Securities, Inc.; DAVID PARSE; CRAIG BRUBAKER; BANC ONE INVESTMENT ADVISORS CORPORATION; BANK ONE CORPORATION, n/k/a JP Morgan Chase & Co.; AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO; SCOTT DEICHMANN; JEFFREY CONRAD; WHITE & CASE, LLP; JOHN OHLE, III; AMERICAN EXPRESS COMPANY; AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC.; and ARTHUR ANDERSON, LLP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Donald R. Wilson, Jr., Laurie Wilson, DRWJ No. Cleveland Trust, Kenneth S.

Brody and KSB Henderson Trust, have brought an eight count complaint against defendants

Deutsche Bank AG; Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex. Brown, a

division of Deutsche Bank Securities, Inc.; David Parse and Craig Brubaker (the "DB

defendants"); Banc One Investment Advisors Corporation; Bank One Corporation, n/k/a JP

Morgan Chase & Co; American National Bank and Trust Company of Chicago; Scott

Deichmann; Jeffrey Conrad; White & Case, LLP; John Ohle, III; American Express Company;

American Express Tax and Business Services, Inc. (the "AMEX" defendants) and Arthur

Anderson, LLP, alleging various state law claims for fraud, breach of fiduciary duty, negligent misrepresentation, breach of contract, professional malpractice and civil conspiracy. Presently before the court are six interrelated motions to stay the proceedings: (1) the DB defendants have moved to stay under § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, based on mandatory arbitration provisions in plaintiffs' account agreements; (2) the AMEX defendants have moved to stay under § 3 and to compel arbitration under § 4 based on their arbitration agreements with plaintiff Donald Wilson, Jr. and the DB defendants' arbitration agreements; (3) JP Morgan Chase has joined the DP and AMEX motions and further move to stay on equitable estoppel and abstention grounds; (4) White & Case has joined the DB defendants' motion and the relief sought by the AMEX motion; (5) Anderson joins the DB and AMEX motions; and (6) Deichmann, Conrad and Ohle, III have joined the DB, AMEX and Chase motions. For the reasons set forth below, the court grants defendants' motion to stay the proceedings and denies without prejudice AMEX defendants' motion to compel arabitration.

## BACKGROUND

This case arises out of tax and consulting services marketed by defendants. Plaintiffs allege that defendants defrauded them by marketing and selling a tax shelter scheme involving digital options which defendants knew or should have know would be challenged by the Internal Revenue Service as lacking economic substance. Plaintiffs allege that the tax shelter scheme was designed by the DB defendants in conjunction with the law firm of Jenkens & Gilchrist ("Jenkens").[1] A more complete description of plaintiffs' claims can be found in this court's

---

[1]Although Jenkens was involved in the transactions alleged in the instant case, it is not named in this case because it reached a settlement in a class action pending in the Southern
(continued...)

2

opinion denying defendants' motion to remand. <u>Wilson v. Deutsche Bank AG</u>, 2005 WL

3299366 (N.D. Ill. 2005).

## DISCUSSION

Plaintiffs entered into private contracts with Deutsche Bank for tax services.  It is

undisputed that those agreements all contain a mandatory arbitration clause which provides:

> I agree to arbitrate with you any controversies which may arise, whether or not
> based on events occurring prior to the date of this agreement, including any
> controversy arising out of or relating to any account with you, to the construction,
> performance or breach of any agreement with you or to transactions with or
> through you only before the New York Stock Exchange or the National
> Association of Securities Dealers Regulation, Inc. at my election.

> . . . No person shall bring a putative class action to arbitration, nor seek to
> enforce any pre-dispute arbitration agreement against any person who has
> initiated in court a putative class action; or who is a member of a putative class
> who has not opted out of the class with respect to any claim encompassed by the
> putative class action until (1) the class certification is denied; or (2) the class is
> decertified; or (3) the customer is excluded from the class by the court.  Such
> forbearance to enforce an agreement to arbitrate shall not construe a waiver of
> any rights under this agreement except to the extent stated herein.

Based on this agreement, the DB defendants argue that plaintiffs' claims against them are

subject to arbitration and that § 3 of the FAA, 9 U.S.C. § 3, requires this court to stay the instant

proceedings pending arbitration.  Plaintiffs admit that their claims against the DB defendants are

covered by the arbitration agreement and that the FAA favors arbitration.  Plaintiffs argue,

however, that the class action exclusion provision in the arbitration agreement prevents the DB

defendants from moving to compel arbitration and allows plaintiffs to proceed in the instant case.

---

[1](...continued)
District of New York, discussed in more detail below.

The parties agree that plaintiffs are members of a preliminarily certified settlement class

in Denny v. Jenkens and Gilchrist, No. 03-CV-5460, pending in the Southern District of New

York, which includes many of the same defendants (including the DB defendants) as in the

instant case and alleges damages resulting from a similar tax shelter scheme.[2]  Plaintiffs are also

members of other putative classes in Denny not yet certified.  None of the instant plaintiffs have

opted out of any of the Denny classes, which plaintiffs agree would encompass the claims

advanced in the instant case.  Based on the Denny class action and the class action exclusion in

plaintiffs' arbitration agreement with Deutsche Bank, plaintiffs argue that the instant case is not

currently arbitrable because the DB defendants are prohibited from enforcing or attempting to

compel arbitration at this time.  Therefore, plaintiffs argue, they can proceed with the instant

litigation.  The DB defendants apparently agree that they cannot presently compel arbitration

with plaintiffs, but argue that the instant suit should be stayed until plaintiffs decide which

forum, the Denny class action or the instant suit, in which they wish to proceed.

As plaintiffs note, the class action limitation in the DB agreement is required by National

Association of Security Dealers ("NASD") Rule 10301, which provides that : (1) a claim

submitted as a class shall not be eligible for arbitration (10301(d)1); (2) a claim filed by a

member of a putative or certified class action is also ineligible for arbitration if the claim is

encompassed by a putative or certified class action filed in federal or state court or is ordered by

---

[2]See Denny v.Jenkens & Gilchrist, 340 F. Supp.2d 338 (S.D. NY 2004) ("Denny I");
Denny v.Jenkens & Gilchrist, 340 F. Supp.2d 348 (S.D. NY 2004) ("Denny II").  In Denny,
brought by the same attorneys that represent plaintiffs in the instant case, judge Scheinlin
preliminarily certified a settlement class and approved (over an objection) a class settlement of
the claims against Jenkens.  The order approving the settlement is currently on appeal before the
Second Circuit.

a court to an arbitrable forum not sponsored by a self- regulatory organization for class wide

arbitration, unless the claimant demonstrates that he has elected not to participate in the class

action (10301(d)2); and (3) no member or associated person shall seek to enforce any agreement

to arbitrate against any customer, other member or person associated with a member who has

initiated in court a putative class action or who is a member of a putative or certified class action

unless the class certification is denied, the class is decertified, or the customer is excluded from

the class by the court or has elected not to participate in the class action (10301(d)3).

The obvious purpose of the Rule, and the corresponding provision in the agreement, is to

encourage resolution of disputes by class actions in courts, and to limit duplicative litigation

either in the courts or in arbitration.  The Securities Exchange Commission stated as much in its

notice and order approving the purposed rule change for the NASD in release No. 34-31371,

1992 WL 316267 finding that:

> In all cases, class actions are better handled by the courts and that investors
> should have access to the courts to resolve class actions efficiently.  In the past,
> individuals who attempted to certify class actions in litigation were subject to the
> enforcement of their separate arbitration contracts by their broker-dealers.
> Without access of class actions in [appropriate] cases, both investors and broker-
> dealers have been put to the expense of wasteful, duplicative litigation.  The new
> rule ends this practice.

Nothing in the Rule or the SEC notice supports plaintiffs' interpretation.  Accepting

plaintiffs position would mean that the existence of a putative class action would result in more

individual litigation in the courts, not less, just the opposite of the desired intent.  Under

plaintiffs' view, they cannot initiate arbitration against defendants because of the existence of the

Denny class action, but somehow they can initiate and proceed with individual cases in federal

court.  This is obviously not the intent of the Rule, which was to exclude class claims from

5

arbitration while requiring arbitrations of individual claims. "The commission believes that investor access to the courts should be preserved for class actions . . .." Id.

Plaintiffs cannot have it both ways. They can either elect to litigate in court as a member of the Denny class action, or they can opt out of that case and arbitrate their claims individually. They cannot, however, rely on the Denny class action to individually litigate their claims in this court. Accordingly, the court grants the DB defendants' motion to stay the instant proceedings. Additionally, because plaintiffs claims allege substantially inter-dependant and concerted misconduct by both the DB defendants as signatories and the remaining non-signatory defendants, the court concludes that all defendants will likely be able to compel arbitration under the DB agreements. See, Hoffman v. Deloitte & Touche, LLP, 143 F. Supp.2d 995, 1004-05 (N.D. Ill. 2001). Accordingly, the court stays this action in its entirety. Because the status of the class settlement in Denny is currently being appealed to the Second Circuit, plaintiffs cannot be expected to opt in or out of Denny until the appeal is decided and the case proceeds in the district court. Since Denny has been argued in the court of appeals, a decision in that case should (hopefully) be issued in the relatively near future. Accordingly, the court stays this action until July 27, 2006.

## CONCLUSION

For the reasons set forth above, defendants' motions to stay are granted. Defendants' motions to compel arbitration are denied without prejudice. This matter is set for a report on status on July 27, 2006, at 9:00 a.m.

**ENTER:**     **March 20, 2006**

_Robert W. Gettleman_

**Robert W. Gettleman**
**United States District Judge**

6

FILED BY _____ .C. D.C.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

05 MAY 24 PM 12: 10

ROBERT R. DI THOLD
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | | |
|---|---|---|
| JOHN T. CRUNK, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-2573 M1/V |
| | ) | |
| BDO SEIDMAN, L.L.P, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS

---

Before the Court is the Motion to Stay the Proceedings of Defendants Deutsche Bank AG, Deutsche Bank Securities Inc., David Parse and Craig Brubaker, filed October 8, 2004. Plaintiffs responded in opposition on October 26, 2004. Defendants filed a reply on November 4, 2004. Plaintiffs filed supplemental memoranda in support of their opposition to Defendants' motion on January 5 and January 12, 2005. In addition to their memoranda, the parties have filed several advisory letters and briefs regarding orders of other Courts deciding similar issues.[1] For the following reasons, Defendants' motion to stay this case is GRANTED.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 5-24-05

---

[1] Defendants filed an advisory letter on April 12, 2005, to which Plaintiff responded with an advisory brief on April 20, 2005. Defendants filed another advisory letter on April 26, 2005. Plaintiffs filed another advisory brief on May 2, 2005, to which Defendants responded on May 20, 2005.

89

## I. BACKGROUND

The instant case is an action brought by two groups of investors who pursued investments under the advice of Defendants and claim to have been misled by the attorneys and accountants who advised them.  Plaintiffs claim that Defendants defrauded them through the marketing and sale of tax advice, charged excessive and unconscionable fees, improperly split fees between lawyers and non-lawyers, and failed to disclose certain information relevant to potential tax amnesty.

The Account Agreement between Defendants and each Plaintiff includes an arbitration clause requiring all controversies between the parties to be arbitrated.[2]  That clause further provides that neither party may seek to enforce the agreement to arbitrate during the pendency of a class action suit, unless the party instituting the suit is excluded from the class.[3]

_____

[2] That provision reads, in relevant part:

> I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with you or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election.

(Defs.' Mot. to Stay the Proceedings, Exs. 1-10, ¶ 19.)

[3] That provision reads, in relevant part:

> Neither you nor I waive any right to seek equitable
> (continued...)

2

Defendants move the Court to stay all proceedings in this case pending the resolution of Denney, et al. v. Jenkens & Gilchrist, et al., No. 03-CV-5460, a putative class action suit filed August 28, 2003, and currently pending in the Southern District of New York. Plaintiffs concede that they are members of the preliminarily certified class in Jenkens and that they have not opted out. (Pls.' Resp. to Defs.' Mot. to Stay the Proceedings at 6.)

Defendants contend that a stay is warranted because Plaintiffs' rights will either be adjudicated by the Jenkens class action, or, if that class is not certified or Plaintiffs choose to opt-out, then through arbitration pursuant to the parties' Account Agreement. Plaintiffs contend that the pendency of the Jenkens class action prevents Defendants from moving to arbitrate and that granting a stay in the instant case will unduly delay this proceeding and thereby prejudice their rights.

---

(...continued)
    relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.
(Defs.' Mot. to Stay the Proceedings, Exs. 1-10, ¶ 19.)

3

## II. ANALYSIS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants ...." Ohio Envtl. Council v. U.S. Dist. Court, Southern Dist. of Ohio, Eastern Div., 565 F.2d 393, 396 (6th Cir. 1977) (quoting Landis v. North American Co., 299 U.S. 248, 254-55 (1936)). "A district court has discretion to determine whether a stay is necessary to avoid piecemeal, duplicative litigation and potentially conflicting results." Int'l Bhd. of Elec. Workers v. AT&T Network Sys., No. 88-3895, 879 F.2d 864, 1989 WL 78212 at *8 (6th Cir. July 17, 1989)(citing Colorado River Water Cons. Dist. v. United States, 424 U.S. 800, 817-20 (1976)). "In exercising this discretion, district courts are to be accorded wide latitude." Id. (citing Kerotest Mfg. Co. v. C-O-2 Fire Equip. Co., 342 U.S. 180, 183-84 (1952); Ohio Envt'l Council, 565 F.2d at 396). However, "a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." Ohio Envtl. Council, 565 F.2d at 396.

In determining whether a stay is appropriate, "[t]he most important consideration is the balance of hardships; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party

will not be injured by a stay." Int'l Bhd. Of Elec. Workers, 1989
WL 78212 at *8 (citing Landis, 299 U.S. at 255; Ohio Envt'l
Council, 565 F.2d at 396). "The district court must also
consider whether granting the stay will further the interest in
economical use of judicial time and resources." Id. (citing
Emerson Elec. Co. v. Black & Decker Mfg. Co., 606 F.2d 234 (8th
Cir. 1979); Aetna State Bank v. Altheimer, 430 F.2d 750 (7th Cir.
1970)). "Relevant to this consideration is the question of
whether a separate suit in another jurisdiction involves the same
issues and parties and is likely to consider adequately all
interests before the court considering a stay." Id.

Having reviewed the record and the parties' submissions, the
Court finds that a stay of this case pending the outcome of the
Jenkens case is appropriate. Based upon the parties' Account
Agreement, Plaintiffs may be required to arbitrate non-class
action claims against Defendants. Defendants would therefore
suffer irreparable harm if Plaintiffs were permitted to avoid
their agreement to arbitrate by filing non-class action claims
while a class action to which they concede they are a party is
pending in another court. Additionally, because Plaintiffs are
concededly members of the Jenkens class and have not chosen to
opt-out, their rights will not be prejudiced by the grant of a

5

stay.[4]  Moreover, granting a stay in this case will further the interest in the economical use of judicial time and resources, since the Jenkens suit involves the same issues and parties as the instant case and is likely to adequately consider the interests before this Court.

Accordingly, Defendants' motion to stay this case is GRANTED and this case is STAYED until further notice from this court. The Court further sets a telephone conference for Wednesday, August 31, 2005, at 8:45 a.m. to determine the status of Jenkens case.

So ORDERED this 24 day of May, 2005.

_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs contend that their rights will be jeopardized if this case is stayed until the Jenkens case is resolved, because there is no indication as to how long the resolution of that case may take.  However, Plaintiffs are free to opt out of the putative Jenkens class and have their dispute heard here or in another forum if they seek a speedier resolution of their claims.  Whether or not opting out of the Jenkens class would subject their claims to arbitration would be properly decided at that time.

6

Case 2:04-cv-02573-JPM-tmp     Document 89     Filed 05/24/2005     Page 7 of 10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 89 in case 2:04-CV-02573 was distributed by fax, mail, or direct printing on May 24, 2005 to the parties listed.

---

Benjamin Sokoly
DEWEY BALLANTINE LLP
1301 Ave. of the Americas
New York, NY 10019--609

Matthew M. Curley
BASS BERRY & SIMS PLC
315 Deaderick Street
Ste. 2700
Nashville, TN 37238--000

Lawrence M. Hill
LAW OFFICE OF DEWEY BALLANTINE LLP
1301 Ave. of the Americas
New York, NY 10019--609

W. Ralph Canada
SHORE DEARY, LLP
2515 McKinney Ave.
Ste. 1565
Dallas, TX 75201

David R. Deary
SHORE DEARY, LLP
2515 McKinney Ave.
Ste. 1565
Dallas, TX 75201

Joe R. Whatley
WHATLEY DRAKE, LLC
P.O. Box 10647
Birmingham, AL 35202--064

Richard A. Nessler
LAW OFFICE OF DEWEY BALLANTINE LLP
1301 Ave. of the Americas
New York, NY 10019--609

Seth C. Farber
LAW OFFICE OF DEWEY BALLANTINE LLP
1301 Ave. of the Americas
New York, NY 10019--609

Robert L. Moore
HEATON & MOORE, P.C.
100 N. Main St.
Ste. 3400
Memphis, TN 38103

Anamika Samanta
WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019--609

Jeven R. Sloan
SHORE DEARY, LLP
2515 McKinney Ave.
Ste. 1565
Dallas, TX 75201

Kevin O'Neal tBaskette
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL, PLLC
One Commerce Square
Ste. 2900
Memphis, TN 38103

Michael R. Young
WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019--609

David Wade
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Robert E. Orians
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Ernest Cory
CORY WATSON CROWDER & DEGARIS
2131 Magnolia Ave.
Birmingham, AL 35205

Stewart Clancy
SHORE DEARY, LLP
2515 McKinney Ave.
Ste. 1565
Dallas, TX 75201

Christine Chi
LAW OFFICE OF DEWEY BALLANTINE LLP
1301 Ave. of the Americas
New York, NY 10019--609

I. Bennett Capers
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, NY 10019--609

Shea Sisk Wellford
MARTIN TATE MORROW & MARSTON
6410 Poplar Ave.
Ste. 1000
Memphis, TN 38119

Othni J. Lathram
WHATLEY DRAKE, LLC
P.O. Box 10647
Birmingham, AL 35202--064

Steven A. Riley
BOWEN RILEY WARNOCK & JACOBSON
1906 West End Ave.
Nashville, TN 37203

Kelly Librera
LAW OFFICE OF DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY 10019--609

Albert C. Harvey
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Michael L. Dagley
BASS BERRY & SIMS PLC
315 Deaderick Street
Ste. 2700
Nashville, TN 37238--000

Honorable Jon McCalla
US DISTRICT COURT