UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

JOHN FINN,

        Plaintiff,

-v-

SMITH BARNEY, CITIGROUP GLOBAL
MARKETS INC., CITIGROUP INC., BRIAN
WILLIAMS, and DOES 1 THROUGH 20,
inclusive,

        Defendants.

-----------------------------------------------------------x

No. 08 Civ. 2975 (LTS)(KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 0 8 2008

## MEMORANDUM ORDER

Smith Barney, Citigroup Global Markets Inc., Citigroup Inc., and Brian Williams ("Defendants") move to stay proceedings in this suit, in which John Finn ("Plaintiff") asserts fraudulent misrepresentation, gross negligence and breach of fiduciary duty claims, until such time as it is determined whether Plaintiff's claims will proceed as part of related putative class actions that are also pending before this Court.[1] The Court has considered thoroughly the submissions from both parties and, for the following reasons, hereby orders that these proceedings be stayed.

### BACKGROUND

Plaintiff brought this suit against Defendants, asserting claims arising out of advice allegedly given by Defendants Smith Barney and broker Brian Williams to invest in auction rate securities. The parties apparently agree that Plaintiff's investment account relationship was governed by an agreement between Plaintiff and Defendant Smith Barney dated July 9, 2004. (See Docket

---

[1] These have been consolidated under the title In re Citigroup Auction Rate Securities Litigation, lead Docket No. 08 Civ. 3095 (LTS) ("In re Citigroup") by order dated June 25, 2008.

Entry No. 11, Exhibit A - Account Application, Client Agreement and Substitute Form ("Client Agreement"); Plaintiff's Memorandum in Opposition to Motion to Stay (Docket Entry No. 16) at 2-3.) This agreement contains an arbitration clause providing, in relevant part:

> I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or no such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, <u>shall be determined by arbitration</u> . . . .

(Client Agreement (emphasis added).) The clause further provides:

> No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action <u>until</u>: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.
>
> Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any of the rights under this agreement except to the extent stated herein.

(Id. (emphasis added).) There is no dispute that Plaintiff is a member of the putative class in In re Citigroup. Class certification motion practice has not yet begun in that matter and Plaintiff has not yet indicated whether he intends to opt out of the class. In addition, there is no dispute that, in light of the pendency of the class claims and the lack of any indication that Plaintiff wishes to opt out, Defendants cannot seek to compel arbitration of Plaintiff's claims at this time. Defendants represent that, in the event Plaintiff opts out, a certification motion is denied, or another of the events specified in the arbitration clause occurs, they will move to compel arbitration of Plaintiff's claims.

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. at 254-255. This power is therefore exercised at the court's discretion. Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986). There are five factors to which the courts in this jurisdiction look in considering whether to grant a stay. These are:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Volmar Distribution v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." Id.

Plaintiff's opposition to the stay application rests principally on the at best questionable premise that the pendency of the putative class actions negates the arbitration exclusivity provision of the contract to the extent that, at least during the period in which Defendants are precluded from seeking to compel arbitration pursuant to the agreement, Plaintiff has the right to litigate his claim in this Court on an individual basis. This argument is inconsistent with the plain language of the agreement, which delays, rather than negates, the investment firm's ability to enforce the pre-dispute arbitration provision ("No person shall . . . seek to enforce a pre-dispute arbitration agreement . . . until: (i) the class certification is denied . . . ." (Client Agreement)). The class action exclusion provision of the Client Agreement, which is required by the rules of the Financial Industry Regulatory Authority ("FINRA"), protects the client's ability to litigate claims on a class action basis rather than through individual arbitration proceedings; nothing in the clause or the records of the agency proceedings relating to the FINRA rule suggests any intention to permit individual litigation of claims. See Securities and Exchange Commission ("SEC") Exchange Act Release No. 34-31371, 57 FR 52659-02, *52661 (Nov. 4, 1992) ("in all cases, class actions are better handled by the courts .

. . [w]ithout access of class actions in [appropriate] cases, both investors and broker dealers have been put to the expense of wasteful, duplicative litigation . . . investor access to the courts should be preserved for class actions" (emphasis added)); Crunk et al. v. BDO Seidman, L.L.P. et al., No. 04-2573 Ml/V, 2005 U.S. Dist. LEXIS 44383, *7-8 (W.D. Tenn. May 24, 2005) ("because Plaintiffs are concededly members of the Jenkens class and have chosen not to opt out, their rights will not be prejudiced by the grant of a stay"); Wilson, et al. v. Deutsche Bank AG, et al., No. 05 Civ. 3474, 2006 U.S. Dist. LEXIS 94847, *11 (N.D. Ill. March 20, 2006) (granting a stay in proceedings where Plaintiffs sought to proceed with individual cases in federal court thereby avoiding arbitration due to the pendency of a class action, as to which they were also members); Olson v. Jenkens & Gilchrist, 461 F. Supp. 2d 710, 729 (N.D. Ill. 2006) (ordering a stay of individual proceedings based on the understanding that "the disputes are still ultimately subject to arbitration if they are not resolved in the class action"). Plaintiff's contention that he would suffer undue prejudice because his right to litigate his claims individually in court would be delayed is thus ill-founded, and this first factor does not weigh in his favor.

The second factor weighs heavily in favor of Defendants. If the In re Citigroup class action litigation survives the pending motion to dismiss the complaint, the discovery stay imposed by the Private Securities Litigation Reform Act will expire and extensive discovery will likely ensue. Permitting Plaintiff to engage in discovery in his action, which clearly "arises out of the same nucleus of common facts" as the pending class action, STT Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003), would prejudice Defendants through the imposition of premature and potentially duplicative discovery burdens.

The Court also has a substantial interest in staying this action. Considerations of judicial economy and efficiency weigh against allowing Plaintiff to proceed with this matter at this

stage. Denial of the stay application would essentially require the Court to maintain duplicative proceedings, each having a different schedule and potentially doubling the amount of time and energy the Court must expend on these issues. "A stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery." ACF Industries, Inc. v. Guinn, 384 F.2d 15, 19 (5th Cir. 1967). A stay may similarly be appropriate when awaiting "the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." LaSala v. Needham & Co., 399 F. Supp. 2d 421, 427. If the individual litigation were to proceed rapidly toward trial, Plaintiff's agreement to arbitrate his claims (unless they are pursued by way of class action) and Defendants' contractual right to demand arbitration of the claims could effectively be negated. Particularly in light of Plaintiff's failure to demonstrate that he has a contractual right to engage in individual litigation, this factor weighs significantly in favor of a stay.

Furthermore, the interests of the other members of the putative class are best served by awarding Defendants' motion for stay. Allowing Plaintiff to proceed individually at this stage would not only undermine the ability of the class to move forward with this matter in a co-ordinated, harmonious manner, but would have the disruptive consequence of providing an incentive for individual members to break from the putative class to seek an individual resolution of their claims, at least at this stage. "Accepting plaintiffs' position would mean that the existence of a putative class action would result in more individual litigation in the courts, not less, just the opposite of the desired intent." Wilson, No. 05-CV-3474, 2006 U.S. Dist. LEXIS 94847, *11.

Finally, the public interest is best served by enforcing a stay. In addition to the considerations outlined above with respect to class actions, federal policy favors the enforcement of arbitration agreements. See 9 U.S.C.A. §§ 1 et seq. (West 1999); Oldroyd v. Elmira Sav. Bank, FSB,

134 F.3d 72, 76 (2d Cir. 1998) ("[t]here is a strong federal policy favoring arbitration"). Given Defendants' stated intention to bring a motion to compel arbitration if Plaintiff decides to opt out of the class action or one of the other events specified in the arbitration clause occurs, the public interest weighs in favor of staying these proceedings until the Court has made its class action determination or, if earlier, Plaintiff opts out.

All of the five factors that the courts in this district consider in determining whether to grant a stay weigh in favor of granting Defendants' motion. Accordingly, the Court will grant a stay.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion and hereby orders that these proceedings be stayed, and this matter be placed on the Court's suspense docket, pending the earliest of the following to occur: (i) Plaintiff opts out of the putative or certified class, (ii) the Court denies class certification or decertifies the class, or (iii) the Court excludes Plaintiff from the class. This Order resolves Docket Entry No.9.

SO ORDERED

Dated: New York, New York
December 8, 2008

LAURA TAYLOR SWAIN
United States District Judge